## JONES *v.* JONES.

1. Where the rights of parties depend on the validity of a divorce granted by the legislature, evidence is admissible to show that causes for which it was granted were within the jurisdiction of the Courts, and hence the legislature had no power to grant it.

2. But evidence is not admissible to show that the divorce was obtained by fraud or falsehood, or that one of the members misrepresented the facts.

IN error from the Common Pleas of Montgomery.

*Dec.* 27. Ejectment. The plaintiff and defendant were married in 1821, and afterwards the premises in question descended upon the wife, who brought this action. To sustain her title the following Act of Assembly was read in evidence:

"Be it enacted, &c. That the marriage contract entered into between Joseph P. Jones and Charlotte S. his wife, late Charlotte S. Styer, of the county of Montgomery, be and the same is hereby

annulled and made void, and the parties released and discharged from the said contract, and from all duties and obligations arising therefrom, as fully, and effectually, and absolutely, as if they had never been joined in marriage : Provided, the children of the said Joseph P. Jones and Charlotte S. his wife, shall enjoy all the rights and privileges of children born in lawful wedlock."—Passed April 16, 1845.

The defendant then offered in evidence the record of an action of divorce instituted in the Court of Common Pleas of Montgomery county, to Aug. T. 1842, by the said Charlotte S. Jones, by her next friend, David Styer, against the said Joseph P. Jones, the defendant, and to prove that the causes set out in the libel of the said plaintiff were, cruel treatment and the offering such indignities to her person as to render her condition intolerable and life burdensome, and thereby forced her to withdraw from his habitation ; that all of said causes were denied by the said defendant, and that the issue was subsequently tried, and a verdict rendered for the said defendant ; that on or about the 6th day of April, 1845, Mr. S., who was one of the counsel for the said Charlotte S. Jones, and at that time a senator of Pennsylvania, presented to the said Senate the petition of the said Charlotte S. Jones, with certain affidavits or documents, praying the said legislature to pass a law divorcing her from the bonds of matrimony with her husband ; that the grounds upon which the said application was made were the same as those stated in her said libel presented to this Court, viz. cruel and barbarous treatment, and the offering of such indignities to her person as to render her condition intolerable, &c. ; That the said Act of Assembly was procured by fraud, falsehood, and undue means, and without any notice to this defendant ; that Mr. S. sedulously concealed from the members of the House of Representatives from this county, all knowledge that any of their constituents were connected with the said bill, but represented that the said application was from a poor woman in Philadelphia, who had been violently expelled by her husband from her home by his setting dogs upon her, causing her to fall on the wood-pile, and cruelly beating and evil treating her, all of which was utterly untrue ; that he called upon one of the members of the House of Representatives and requested him to call up this bill, stating that he could not trust the Montgomery county members, and upon being appealed to to know if all was right, replied it was.

That the said bill was introduced into the House just at the close

of the session, when the hurry and confusion would prevent a fair investigation of its merits, and with a view to its passage without the knowledge of Mr. Jones.

The Court rejected the evidence.

*H. Freedley* and *G. R. Fox*, for plaintiff in error.—The power of the legislature to grant divorces is limited by the Constitution, Art. I. s. 14. The grounds upon which it proceeds must therefore appear as in the case of Courts having either a special or a limited jurisdiction: 9 Wheat. 541. The necessity of restraining the exercise of power within the constitutional limits, is shown in 1 Barr, 222; 16 S. & R. 38. Without notice, or the opportunity of being heard, no one can be deprived of his property, unless by the law of the land: Const. Art. IX. s. 9; and Acts thus specially passed are not the law of the land: 6 Barr, 86. Nor can a legislative decree or conveyance, if procured by fraud, be more effective than those of a Court or a party—both are void: 2 W. 66; 7 Ib. 86; 1 W. & S. 128. How is the Constitution, the supreme law, to be enforced, if evidence is not received of the facts on which the authorities thereby created acted, which will show that the power was usurped? To reject it will be to declare this clause a dead letter, at the discretion of the very body intended to be restrained.

*McMurtrie* and *Mulvany*, contrà.—The power of the legislature was absolute until the new Constitution restrained it, in one class of cases. The presumption is *de jure*, that legislatures, having authority over the subject-matter, act within the scope of their power, unless the contrary appears on their proceedings: Stockdale *v.* Hansard.

They are restrained by the same power that restrains this Court; and there are many instances in which a supervision by the Courts would be impossible: Const. Art. I. ss. 8, 12, 13, 15, 16, 17, 20, 21, 23, 25; Art. II. ss. 1, 10, 11.

It does not follow that the divorce was granted for the causes alleged in the petition: others might have been proved, or there might have been a consent of parties.

But the Act was a judicial one, and having jurisdiction over the subject and parties, the decree in effect avers that proof of facts necessary to found it was made. This rule has been settled as to inferior Courts in this State: 1 Rawle, 145, case of a militia court martial; Doug. 614, case of prize; 2 T. R. 346, Cowp. 315, depri-

vation by a visiter; 2 H. Bl. 100, courts martial; Doug. 310, trustees of a school dismissing master; 1 Lev. 236, 3 T. R. 125, the fact that a party was executor; 11 S. & R. 429, that there were debts of a decedent. In all these there was no jurisdiction unless certain facts existed, and they were held to be conclusively proved by the decree pronounced on their supposed existence; and where a Court so constituted has acted "whether with or without cause, or whether the cause be true," cannot be averred: 7 Rep. 42, b.

The evidence of fraud was clearly inadmissible, if on the legislature that cannot be shown: 6 Cranch, 130; nor if in the legislature: 7 Rep. 42, b. They alone as other Courts are competent to correct that: 7 Watts, 425; 11 S. & R.. 123; 4 Watts, 191; 10 S. & R. 240; Amb. 762, 763. The conduct of a member is offered to be proved, but it cannot be: 6 Cranch, 130. He was a judge in the cause. As to notice, there is no provision requiring it; and in proceedings *in rem*, the presumption is *de jure* that it was given: 1 Stark. 242; and all citizens have actual notice of the acts of their own representatives: 1 Bl. Com. 185.

*Jan.* 28. COULTER, J.—The case presents for the judgment of the Court a question of property between two individuals. In reaching that question, however, it is absolutely necessary to consider the social relation of the parties, and to estimate its effect on the question of property. One party invokes the protection of a clear and explicit provision of the constitution. And to reach *that*, we must, if necessary, go over an interposing Act of Assembly. In England, parliament has frequently annulled the contract of marriage for adultery. There is, perhaps, more reason for the practice there than existed in this State for the exercise of a similar power by the legislature; because parliament is a Court. Lord Coke says it is the highest and most honourable Court in the kingdom. But that high Court proceeds with the utmost circumspection, examines witnesses to prove the adultery, and in cases where the guilty parties have not left the realm, requires that there shall also have been a trial in the common law Courts for criminal conversation, and damages recovered, and also that a sentence of divorce in the spiritual Court should have been decreed, which can only divorce *a mensa et thoro;* hence the necessity of the intervention of parliament to divorce *a vinculo*, whose power, only, is adequate to that end. But in this State, the legislature seems to have acted on the ground that it was an exercise of legislative power, and therefore

not requiring a judicial examination. We think, however, that this doctrine may be well questioned.

A divorce annuls a civil contract between two individuals, of a higher and more imposing nature, and of more emphatic emphasis on the whole structure of society, than the voluntary contracts. by deed or by parol. And there flows from the severance of the contract, a divestiture of property from one and a re-investment of it in the other. It is in fact a judgment in a dispute between two individuals, the justice of which must depend upon facts in relation to which both parties ought to have an opportunity to be heard. But however questionable the power might have been under the Constitution of 1790, the amended Constitution of 1838 did expressly prohibit its exercise by the legislature, wherever the Courts then had or should thereafter be vested with power; from which an implication results of a power to annul the marriage contract in the non-enumerated cases. The legislature has therefore a limited power, with an express prohibition outside of the limitation. Sec. 14, art. 1, is as follows: "The legislature shall not have power to enact laws annulling the contract of marriage in any case where by law the Courts of this Commonwealth are or may hereafter be empowered to decree a divorce." The Courts have now power to decree a divorce in almost every case where a divorce is justifiable. The Act of Assembly does not express on its face, or in a preamble, the cause of the divorce in the present case. It is in these words: [His Honour here stated it: see antè, pp. 350–351.]

It does not appear from the Act whether the case was within legislative power or not. And the position taken by the defendant in error, is, that Courts cannot go, as they call it, behind the Act itself to ascertain whether it was within the pale of the Constitution or not. But I apprehend that we can, in all cases, go to the Constitution itself. The majestic impersonation of the sovereign people speaking through the Constitution, is always present in this Court, and must always be heard and obeyed.

The power confided to the legislature is a limited power, and it cannot be allowed that they should convert it into an unlimited power. If they can convert a special jurisdiction into a general jurisdiction, the provision of the Constitution becomes dead. If Courts cannot or will not go behind the Act, where the cause is not expressed on its face, the clause in the Constitution might as well have been that the legislature shall annul, &c., as that they shall not. It requires but a trick of the pen to leave out the cause, and then

the power becomes general. A great number of authorities have been cited by the defendant in error to show that in judicial proceedings the judgment of a Court of competent and general jurisdiction over the subject-matter, cannot be overhauled in a collateral proceeding. All this is admitted, but then it is to be understood that the party was affected with notice in the mode pointed out and prescribed by the law. But no Court ever held that a judgment against an individual who had no notice whatever was valid. We know that the legislature never summon the party, and that they proceed, in nine cases out of ten, upon *ex parte* testimony. The cases therefore are not applicable. But the counsel assume the fact in contest, and then lean on those authorities. The legislature have not a general jurisdiction over the subject of divorce. Their jurisdiction is limited, and these authorities, even assimilating the proceeding to analogous cases in Court, do not touch the question.

It was however ruled in Kemp *v.* Kennedy, 1 Peters's Cir. Court Reports, 36, that Courts of limited jurisdiction must not only act within the scope of their authority, but that it must appear on the face of their proceedings that they did so, and if it does not so appear, all their proceedings are *coram non judice.* This is the general principle as to Courts of limited jurisdiction, so that every just analogy drawn from proceedings of Courts is against the defendant. But I place the decision on the broad ground that the Constitution must be preserved, and that if Courts should refuse to permit evidence to show the grounds of the divorce, the legislature could obliterate the clause in the Constitution. This is a question of property resulting from the divorce. The party has a right to the protection of the constitutional provision, and if necessary, the Court can touch the Act with the judicial wand, and open it to inspection, so as to see whether or not it is within the pale of the Constitution. The evil of this example would not terminate with this class of cases, but reach with fatal effect to others. The legislature can *aliene* and grant the public domain not already appropriated. They have therefore a limited jurisdiction in granting lands. Suppose they were to pass a law granting three hundred acres of land on the Delaware, by well defined boundaries, to John Doe, could not the real owner of the land be permitted to show that the land had been granted more than a hundred years ago, to those under whom he claimed, and that therefore the legislature had no power or jurisdiction over it? Not so, if full effect is given to the argument of the counsel for defendant in error. Courts

cannot go behind the law, but must presume against fact that the legislature acted within the scope of their power.   In the one case as well as the other, the legislature have a limited jurisdiction; in case of the land, to grant that which had not previously been granted, and in cases of divorce, to grant them where the power had not been previously granted to the Courts.   And the only mode of preserving the Constitution and protecting the rights of individuals in either case is to admit the best evidence, *aliunde* as from behind the law.   Evidence of this kind has been admitted by the Court when the peril to individuals was not so pregnant as here: Austin *v.* Trustees, 1 Yeates, 260; Stoddart *v.* Smith, 5 Binney, 353; Bolton *v.* Johns, 5 Barr, 145.

In the case of Gaines *v.* Gaines, Penn. Law Journal, June 1849, the Court of Appeals of Kentucky decided, that a special law granting a divorce was a judicial act, and as such belonged to the Court; and admitted evidence to show that when an act was passed, judicial proceedings were pending to procure a divorce; and that, therefore, the law was void as it respected the property of the parties; and decreed dower out of the estate of the husband, notwithstanding the legislative divorce.   We are of opinion that the following evidence, offered by the defendant below, ought to have been admitted, to wit:

"Defendant offers in evidence the record of an action of divorce, instituted in the Court of Common Pleas of Montgomery county, to August Term, 1842, No. 29, by the said Charlotte S. Jones, by her next friend David Styer, against the said Joseph P. Jones, the defendant.   That the causes set out in the libel of the said plaintiff were cruel treatment and the offering of such indignities to her person as to render her condition intolerable, and life burdensome, and thereby forced her to withdraw from his habitation.   That all of said causes were denied by the said defendant, and that the issue was subsequently tried, and a verdict rendered for the said defendant.   That on or about the 6th day of April, 1845, Mr. S., who was one of the counsel for the said Charlotte S. Jones, and at that time a senator of Pennsylvania, presented to the said Senate the petition of the said Charlotte S. Jones, with certain affidavits or documents, praying the said legislature to pass a law, divorcing her from the bonds of matrimony with her husband.   That the grounds upon which the said application was made were the same as those stated in her said libel presented to this Court, viz. cruel and bar-

barous treatment, and the offering of such indignities to her person as to render her condition intolerable."

But that what follows, in relation to the manner of proceeding, or agencies used by any member of the body, ought to be rejected.

It would be unbecoming and discourteous to the legislative body, to admit such evidence, which is excluded by the case of Fletcher *v.* Peck, 6 Cranch, 87. We are of opinion that the Court erred in excluding the evidence in the first bill of exceptions, the second, the third, and the fourth. The object in these öffers was to bring before the Court the very best evidence the nature of the case admitted of the grounds on which the divorce was procured; that is, the petition of Mrs. Jones to the legislature, and the affidavits by which it was ·sustained, all of which it appears were in Court. The act of the legislature was constitutional, if it was passed for any of the non-enumerated causes in the constitution; in other words, if not for any of the causes over which the Court had jurisdiction. The defendant takes ground too broad, therefore, when he asks the Court below to say that the act is unconstitutional on its face. The point of this decision is, that the defendant below has a right to establish, by such evidence as he offered, that the ` Act was passed for a cause over which the Courts had jurisdiction, and that the Court of Montgomery county, on a fair trial between the parties, in relation to the alleged causes, had given judgment against the plaintiff, and that, therefore, _the legislature had no jurisdiction or power to grant the divorce.

A great deal was said in the argument of the duty of this Court to presume that a co-ordinate branch had confined itself within the scope of its power. I will admit, that if the legislature had ,specified, in the act, or by a preamble, that the divorce was granted for a cause where the Court had no power, a very different case would be presented. But they have not said it. At most, however, this is nothing but the old argument, not pushed to quite its full extent, that the Courts must always presume that a co-ordinate branch acted within the scope of its authority, and cannot, therefore, declare its acts unconstitutional.

The old rule is a good one, that, where a fact cannot be made to appear, the reason is the same as if it did not exist. As the legislature have not expressed the cause, we throw it open to evidence by either party, so that this question of property may be justly decided, according to the Constitution.

. Judgment reversed, and *venire de novo* awarded.