STATE OF MISSISSIPPI, EX REL. CITY OF VICKSBURG, *v.* WASH-
INGTON STEAM FIRE COMPANY NO. 3.

1. MUNICIPAL CORPORATIONS. *Fire company. Forfeiture of charter.*

The absence of willful wrong or neglect does not excuse a corpora-
tion. formed to aid the public political functions of a municipality,
for a failure to perform the duties for which it was created; or, if
the legislature so declares, save the forfeiture of its charter.

2. SAME. *Ordinances. Bad faith in passage.*

Municipal ordinances cannot be avoided by the imputation of bad
faith in their passage.

FROM the circuit court of Warren county.

HON. WM. K. MCLAURIN, Judge.

The state, suing on the relation of the city of Vicksburg,
was the plaintiff in the court below; the fire company, a corpo-
ration, was defendant there.   On March 10, 1897, the state of
Mississippi, on the relation of the city of Vicksburg, filed an
information in the nature of a *quo warranto* against the Wash-
ington Steam Fire Company No. 3, of Vicksburg, alleging
that the defendant company was in 1870 incorporated by an
act of the legislature of the state of Mississippi; that, by the
third section of its charter, provision is made "that, as a con-
dition of the charter, said company shall always keep a fire
engine for the purposes of said company, and all proper and
useful hose for the extinguishment of fire," and charging that
said company, for more than six years last past, has not com-
plied with the terms of its charter, and has had no engine or
hose.   The information prayed judgment of forfeiture against
said company of its franchise.   To this information the defend-
ant company pleaded three special pleas:

*First special plea.*   That after receiving its charter, to wit,
on the eleventh day of June, 1870, said company organized

76 Miss.—29

and built in Vicksburg a two-story brick building, known as the "Washington Engine House," and made arrangements with relator for the use of a fire engine and hose owned by the city; that said engine and hose were kept in said building and were used by defendant in its work as a fire company of said city until the third day of June, 1889, when Vicksburg changed its fire system by taking control of and running the fire department and by paying and employing all employes thereof; that by said change the city did away with the use of fire engines and placed the entire fire service in the sole control of the municipal authorities; that the city took away from defendant said engine and hose and took exclusive control of all water supply for fighting fires; that the defendant company has always kept up its organization, and has been ready to comply with all the terms of its charter; and that the object of the proceeding is to have the charter forfeited that the city might get title to the company's property.

*Second special plea.* That section five of its charter provides as follows: "*Be it further enacted,* That said company shall be and continue a fire company of the city of Vicksburg, and be subject to the ordinances of said city regulating the fire department;" that on the granting of said charter said defendant company, at the solicitation of the relator, organized as a fire company of said city; that relator accepted and used it as such, and, by an agreement satisfactory and compensatory to both parties, let the defendant have a fire engine and hose for said purpose, and which the defendant kept and used up to the third day of June, 1889, when relator organized its own fire department, took exclusive control thereof, has excluded defendant from being a fire company, dispensed with the use of fire engines, took away from defendant, over its protest, said engine and hose, and took charge and exclusive control of all sources of water supply for fighting fires, in all which it has hitherto continued and now continues, rendering it a vain thing for defendant to run an engine and hose; that defendant has always

kept up its organization, and has been and is now ready to pro-
vide and keep a fire engine and hose for extinguishing fires,
and offers to do so if it be allowed by relator to do service as a
fire company of the city.

*Third special plea.* That the alleged failure to comply with
the charter does not constitute a prejudice to any public inter-
est, and does not involve the safety, welfare, or security of the
community, for relator took exclusive control of the fire service
of the city, and has since continuously served the city in that
capacity, and meets every demand of the public as well as
could be done by the defendant; that the present fire extin-
guishing arrangement was intended to be only temporary, and
will, in the near future, be abandoned for economic and other
reasons, when defendant may be permitted again to do service
as a fire company of said city.

To these three special pleas the plaintiff demurred, but the
demurrer was overruled, whereupon plaintiff made replication
to each of said pleas as follows: That in 1870 the fire depart-
ment of Vicksburg was conducted on the volunteer plan; that
on the eleventh day of June, 1870, the defendant company was
chartered; that by the third section of its charter it was pro-
vided that the defendant should always keep a fire engine and
all proper hose for the extinguishment of fires; in consideration
thereof the members of said corporation should be exempt
from military duty, except in certain contingencies named;
that by its charter it was provided that said company shall be
and continue a fire company of said city, and be subject to its
ordinances regulating the fire department; that when said
company shall cease to exist all the property used by it shall
become the property of the city for the use of the fire depart-
ment; that the defendant never owned an engine, or hose, or
any other appliances for extinguishing fire, and that all prop-
erty and appliances used by it were furnished by the city, and
all expenses connected with its work were borne by the city,
only the members thereof using the appliances aided in the

extinguishment of fires. That, in 1889, the city changed the operation of its fire department from a volunteer to a paid department; that this change has been in operation for nine years, and the city has within its limits a complete system of waterworks, and that the volunteer system will never again be adopted in its fire department; that when this change was made the city government took possession of its engine and hose, and the whole aim, design, and purpose of said defendant corporation ended; that, during all the time since then, the defendant has continued to occupy the upper story of said building, but has never rendered, and never can again render, any service whatever to said city in its fire department, but, on the contrary, by keeping said upper story, defendant interferes with the operation of the fire department of the city; that defendant, when it accepted its charter, well knew that it was granted solely for the purpose of aiding the city in the extinguishment of fire, and when such a change in the fire department was made, which it well knew the city had a right to make, as would supersede the necessity of such a corporation, then its purpose would be ended, and the property must go to the fire department of said city.

To this replication the defendant demurred. The demurrer was sustained, and the petitioner declining to reply further, judgment final was entered against the relator, from which judgment the plaintiff below appealed.

*Shelton & Brunini,* for appellant.

The petition shows a continuous nonuser of the franchise for about ten years. The pleas admit the nonuser, but say that it resulted from the act of the city and not from any fault on defendant's part. Does this plea offer a valid excuse for defendant's failure to comply with the condition of the charter, viz.: to keep always on hand a fire engine and all useful and proper hose for the extinguishment of fires? · The city did no wrong. It had the right to make the change in the management of its

fire department. There was no contract in the charter that such a change should not be made; on the contrary, appellee accepted the charter with full knowledge that the city could and might make such a change, and that when made, the end for which a charter was granted would cease and the corporation would have nothing to do. In *Turnpike Company* v. *State*, 3 Wall. (U. S.), 210, the excuse for not keeping the road in repair, set up by the turnpike company to avoid the forfeiture of its franchise, showed that the state had chartered a railroad company whose road ran parallel with the turnpike, which had destroyed the business of the turnpike company to such an extent that the tolls received did not afford sufficient funds to keep up repairs. The supreme court of the United States, responding to this contention, say: "The difficulty of the argument in behalf of the turnpike company, and which lies at the foundation of the defense, is that there is no contract in the charter of the turnpike company that prohibited the legislature from authorizing the construction of the rival railroad. No exclusive privileges had been conferred upon it, either in express terms or by implication, and hence, whatever may have been the general injurious effects and consequences to the company from the construction and operation of the rival road, they are simply misfortunes which may arouse our sympathy but are not the subject of legal redress. There is an implied condition in every charter that the corporation shall perform certain trusts and discharge certain duties, and that a failure on its part in this respect will be a cause of forfeiture. *Attorney-general* v. *M. V. & S. I. R. R. Co.*; 51 Miss., 605; *Bank of Rodney* v. *State*, 4 Smed. & M., 492; *Commercial Bank of Natchez* v. *State*, 6 Smed. & M., 618; *State* v. *Commercial Bank of Manchester*, 33 Miss., 497.

In this case the corporation, by change of conditions, which must have been contemplated as possible when the charter was accepted, is placed in a position where it will ever remain impossible for it to accomplish the purpose which the state had in

view in granting the charter. The franchise must remain entirely useless to the public, and, if the privileges which it confers are to be retained and enjoyed by its members, then a municipal corporation—a department of government representing a large constituency—is to be forever hampered in the operation of its fire department by the presence of this corpse, dead as to all purposes for which it was created, yet holding on like an octopus to the privileges granted in consideration of services to be rendered. If the state cannot remove this defunct concern, and make room for living agencies to work for the public, then, indeed, is the law a farce, and the city will always find itself tied to a dead body from which it can never escape. But we believe that an enlightened jurisprudence will now come to the aid and relief of the suffering people.

*George Anderson,* for appellee.

This case stands on facts peculiar to itself, and is different from anything that has ever before appeared in this or any other state. The city, knowing that its hands were too unclean to win in a court of equity, and knowing that it was necessary to first procure the legal and actual forfeiture of defendant's charter, has, as relator, begun this *quo warranto* proceding for the purpose of obtaining defendant's property, hiding itself behind the great State of Mississippi, and by that means seeking to cover up the moral turpitude of its own unconscionable and unrighteous act.

To grant the relief prayed for on the facts disclosed by the pleadings would be to authorize the city of Vicksburg, because it has the brutish power, to throw defendant down, tie it hand and foot, deprive it of liberty and locomotion, and then, because it did not perform the duties and functions of a free man, have the state to execute it and confiscate all its worldly possessions.

To the claim of counsel that the city had a right to change its system of fire service, I reply that may be true, but when the city arranged with the defendant for its services as a fire

company it did so under the conditions of section five of the charter, " that said company shall be and continue a fire company of the city of Vicksburg, and be subject to the ordinances of said city regulating the fire department." This is as much a condition of this charter as the provisions of section three, and while I am not prepared to deny that the city could not change its entire fire system so as to take away the rights of defendant as a part of the fire department of the city, yet, having accepted it as such under the provisions of this charter, it cannot · claim the forfeiture of defendant's charter, and thereby its property, by depriving it of the power to further act in the premises. It cannot invoke the provisions of the latter part of this section five without, at the same time, complying with those of the first part. In other words, before such a forfeiture can be claimed and declared, it must be caused by the voluntary act of the defendant itself, and not by the wilful act of the city.

The difference between this case and that of *The Turnpike Company* v. *State*, 3 Wall., 210, cited and relied on by counsel, is that there the company ceased to operate, because, by action of the state, its business had ceased to be profitable, while here defendant ceased operation, not because it was merely unprofitable, but because the city had taken away all its powers and functions to further proceed.

Where the remedy of *quo warranto* is invoked solely for the private interest of a private individual or corporation, the appropriate defense as against such private individual or corporation may be interposed. *Andrews* v. *State, ex rel. Covington*, 69 Miss., 740; *Harrison* v. *Greaves*, 59 Miss., 453; *Lindsey* v. *Attorney-general*, 33 Miss., 508; *State* v. *Burnett*, 2 Ala., 140.

Everything in this case clearly shows that the remedy is invoked by the city of Vicksburg solely for its own private, individual interest, to wit, to get the property of defendant. Hence we have a right to avail ourselves of any defense that we would have against the city were it the real and nominal plaintiff.

This fire company, although shorn of its strength, still lives, and willingly, freely and urgently offers to be allowed to fulfill the purposes of its existence. To this end it solemnly protests against the great State of Mississippi lending its aid to the wicked and immoral designs of the city of Vicksburg in trying to rob it of its hard-earned accumulations.

TERRAL, J., delivered the opinion of the court.

The demurrer of the defendant to the replication of the state should have been extended back to the special pleas of the defendant, for these pleas, we think, present no defense to the information. Section 3520, code 1892, provides that the remedy by information lies whenever a corporation shall cease to discharge the duty for which it was created. It is insisted that the defendant company has not forfeited its charter, because it has not been guilty of any wilful wrong or neglect.

It would seem that moneyed corporations do not forfeit their charters unless for positive wrong or wilful neglect, but municipal corporations and corporations constituted to aid them in the discharge of their public political functions stand upon a different footing. These latter corporations exist by grace only, and not by contract, and, when they cease their functions, they become extinct, if such be the declared legislative will.

Washington Steam Fire Company No. 3 was brought into existence as an agency of the city in the operation of the fire department; its franchise is a part of the public political powers of the city; it acquired its property under the express stipulation that it should belong to the city when it ceased to perform its duties, and, doubtless, its property was acquired through a stream of beneficence which flowed in that channel, because it was known that the public were the real beneficiaries.

The defendant company took its charter well knowing that it was a mere agent of the city in the operation of the fire department, and that the city could, at its pleasure and discretion, dispense with the services of the fire company.

Bad faith cannot be imputed to the city, for the courts will not try such a question. It must be assumed that the municipal authorities are acting in good faith, and are striving to effect the best results for the city. In 1870 they accepted the aid of the defendants as a volunteer fire company; in 1889 they chose to operate the fire department under a different system, which makes it necessary for the defendant company to stand aside, and to give the authorities liberty to work unhindered by its presence. That the defendant company acquitted itself honorably in the past is not a plea for its further existence as against the will of the city.

When in section five of the defendant's charter, which provides that said company shall be subject to the ordinances of the city of Vicksburg regulating its fire department, and that, when said company should cease to exist (as, by ceasing to perform the duty for which it was created), all its property shall belong to said city, the legislature thereby, in effect, declared a forfeiture of the defendant's charter when the ordinances of the city made it impossible for the defendant company to perform its duties as a volunteer fire company of said city, and the judgment of the court, if it be found that said company has ceased to exist, is merely a declaration of the legislative will. The demurrer of the defendant company to the replication of the. state is extended back and attached to the three special pleas of the defendant company, and, as to said pleas, said demurrer is sustained.

*Judgment below is reversed, and case is remanded for a new trial.*