CITY OF VENICE, *Appellant*, v. STATE OF FLORIDA, *Appellee.*

Division B.

Opinion filed October 23, 1928.

*Giles J. Patterson* and *Burket & Fish,* Attorneys for Appellant;

*Perry, Williams & Williford,* Attorneys for Appellee.

BUFORD, J.—A statutory proceeding was instituted in the Circuit Court in and for Sarasota County, Florida, by the City of Venice to validate $321,000.00 of municipal improvement bonds of the City of Venice. The Town of Venice was created by Chapter 11776, Laws of Florida, Extraordinary Session of 1925 and the Act contained a provision that same should go into effect July 1st, 1926, and that the first officials provided for in the Act should be appointed by the governor. The Act was approved by the governor on November 30th, 1925, and the officials, it appears from the record, began to function under their appointment by the governor in December, 1926. The Legislature of 1927 by Chapter 13478, changed the name

from the Town of Venice to the City of Venice. Under the charter the Town of Venice was authorized to construct paved streets and the City of Venice acquired the same authority. The City of Venice, pursuant to ordinance in each case, paved sixteen streets of the City or sixteen different parts of streets of the city under separate ordinances. Contracts were let by the proper municipal officers of the city for paving these streets. The work was performed and the streets accepted. Assessments were levied against the abutting property and the liens for such assessments were entered in the Street Improvement Lien Book in accordance with the provision of the charter. Certain objections were filed to the assessments which were passed upon by the council in accordance with the provision of Sec. 4, Article I of the charter. Certain modifications were made in the assessments; all assessments were reduced 10% and reductions were entered in the Street Improvement Lien Book. This 10% reduction was placed as a charge against the municipality to be paid from the general fund of the municipality in accordance with the provisions of Sec. 4 of Article I of the charter. After all this was done the city council passed an ordinance providing for the issuance of municipal bonds in the sum of $321,000.00 for the purpose of paying for said improvements. This case is for the validation of the bonds provided for in the ordinance numbered 113.

It appears from the record that a demurrer was filed to the petition, that no other pleadings were filed; that a date was set for hearing and a large volume of testimony was taken before the Court, the major portion of which appears to be irrelevant and immaterial and none of which appears to have been in support of any issue presented by the pleadings. It does appear in the record, however, that the B. L. E. Realty Corporation had sold a number of lots

to inviduals which were located in Venice and that in the contract for the sale of such lots there was included a provision, as follows:

"Whereas, the seller is now developing a tract of land as shown upon the plat hereinbefore described and intends to further develop and improve said tract and to open up and lay out streets, roads and ways as shown on said plat, and to install, without cost to purchaser, electric lights and water accessible to the property herein agreed to be conveyed, and to pave the streets and lay sidewalks and curbing adjacent to said property and to beautify the streets and parkways with trees and ornamental shrubbery in keeping with the general development, and is, therefore, desirous of subjecting the lands covered by said plat to covenants, agreements, easements, restrictions and charges."

And it further appears that the officers of B. L. E. Realty Corporation had given assurance to the city officials that the Realty Corporation would pay the assessments which had been made against all property which it had sold under contracts containing the above quoted provision.

It was contended that the issuance of the bonds by the municipality was and is in conflict with Sec. 7 of Article 9 of the Constitution of the State of Florida, which is as follows:

"No tax shall be levied for the benefit of any chartered company of the State, nor for paying interest on any bonds issued by such chartered companies, or by counties, or by corporations, for the above mentioned purpose."

The judge of the circuit court held, "The proceedings are in violation of Sec. 7 of Article 1 of the Constitution of the State of Florida * * * and that the bonds sought to be validated are not primarily for the benefit. of the public" and the petition to validate them was denied on authority of Bradenton v. State, 88 Fla. 381, 102 So. R. 556 and Childs et al. v. Daugherty et al., 73 Fla. 72, 75 So. R. 783.

Neither of the cases mentioned in the decree have a binding application to the case here under consideration. In this case the record shows that the municipality was authorized to pave its streets and to assess abutting property for the payment of such improvements and was authorized to issue bonds for such purpose. There is nothing which is more universally recognized as a public purpose than is the construction of streets within a municipality. Therefore, it is too well settled to admit of question that the bonds sought to be issued are for the purpose of producing money with which to pay for public improvements which have already been constructed under a valid contract between the city authorities and a contractor, or contractors, and that the obligation to pay for the paving which has been constructed is the direct obligation of the City of Venice assumed by the City of Venice through its proper officers.

It appears to us that the provision heretofore quoted appearing in the several contracts made between a private corporation and certain purchasers of lots has no bearing whatever on the validity of the bond issue. Those contracts, and the provisions thereof, are matters between the contracting parties and if either party has breached its contract, and the other party is damaged by such breach the party so injured may seek relief in the courts, if relief will not otherwise be accorded.

It also appears to us that the assurance of B. L. E. Realty Corporation that it will pay the assessments which are levied or may be levied against property which it has sold under the contracts above mentioned has no bearing on the validity of the bonds. If it may be said to have any bearing at all it at most only shows that it is the attitude of the B. L. E. Realty Corporation to hold purchasers of lots from it harmless as against the assessments which have been made for this improvement. The law applicable to this feature of the case before us has been clearly enunciated by this Court in the case of Hunter v. Owens, 80 Fla. 812, 86 So. R. 839, in which Mr. Justice WHITFIELD, delivering the opinion of the Court, says:

"While under the constitution 'no tax shall be levied for the benefit of any chartered company of the State' (Sec. 7, Article 9), yet if a public improvement that is afforded by tax levies does merely incidentally benefit private corporations along with other persons, the constitution is not violated in levying the tax for the public purpose, for the law contemplates that corporations shall participate in the burdens and benefits of taxations within appropriate limitations."

And in Peterson v. The Town of Davenport, 90 Fla. 71, 105 So. R. 265:

"Whether the object for which bonds are to be issued is a municipal purpose may not be arbitrarily determined by legislation without regard to organic limitations; but a statutory determination of what is an appropriate municipal purpose will not be disturbed by the courts, where the purpose designated by the statute is in fact municipal in its nature, and no provision or principle of organic law is violated in such designation."

The decree of the chancellor should be reversed with directions to enter a decree validating the issue of bonds as sought in the petition and it is so ordered.

Reversed.

TERRELL, STRUM AND BROWN, J. J., concur.

ELLIS, C. J., AND WHITFIELD, J., dissent.

ELLIS, C. J. (dissenting):

The bonds which the City of Venice intends to issue are for the purpose of certain street improvements consisting of "clearing, grubbing, grading, draining, constructing shell concrete combination curb and gutter, shell concrete paving and shell concrete sidewalks." There were sixteen streets embraced in the plan which was inaugurated on May 9, 1927, when six ordinances were introduced relating respectively to certain streets and avenues proposed to be cleared, graded, paved, etc. In each case the three readings of the ordinances were unanimously resolved by the three councilmen to be made at that meeting. Each ordinance was read by title only the second and third times.

Each ordinance recites that the city council deems it necessary to improve the particular street or portion thereof with which the particular ordinance deals; that it should be improved in accordance with the plans, specifications and estimates for the work prepared by the engineer of the city on file in his office, and which by particular ordinance were approved. The mayor was directed to advertise for bids for the construction of the work and that the city should reserve the right to reject any and all bids.

Each ordinance required that the improvements should be made at the cost of the owners of the lots or parcels of land abutting upon the improvements which lots were by

the particular ordinance determined to be "specially bene-
fited by said improvements, and that such cost shall be
assessed against said abutting lots and parcels of land by
the front foot." Each ordinance provided that soon after
the improvements were completed the city engineer should
prepare a statement of the "cost thereof", the date of
completion of the work, a tabulation of lots abutting and
a "tentative assessment against such abutting property ac-
cording to the front foot" and report to the council for
its "consideration and the entering in the Street Improve-
ment Lien Book."

Each ordinance provided that assessments when levied,
together with interest, should be a lien upon the "abutting
and specially benefited land" superior to other liens except
those for taxes, and it was provided that such liens could
be discharged by payments in cash or in ten annual install-
ments; that upon levying such assessments the improve-
ment bonds should be issued according to "law in such
cases made and provided."

Each ordinance also provided that the council could bor-
row money and issue notes therefor for financing the work.
The notes it was provided should be "retired from the
proceeds of the sale of such bonds."

Each ordinance became in full force and effect from and
after its passage and approval by the mayor. Each was
read the first, second and third time and approved by the
mayor on the 9th day of May, 1927.

On June 20, 1927, ten other streets were added to the
plan and the same procedure taken. Ten ordinances pre-
pared, read first, second and third times; passed unani-
mously by the three councilmen and approved by the
mayor on the same day. Each of the sixteen ordinances
contained the same provisions except in so far as each

related to a particular project. Each session of the council at which these laws were enacted began at 8:30 p. m.

There is not so much as a suggestion in either the minutes of council or the sixteen ordinances that the public necessity or convenience required the execution of the scheme of improvements in part or in its entirety; and there is no presumption of law from the mere enactment of the ordinances that such necessity or convenience exists. There is no suggestion in either the minutes or the ordinances that any effort was made to ascertain the special benefit, if any, to accrue to each piece of property abutting upon proposed improvements. No effort was made to determine to what proportion of the reasonable cost the public was to be benefited and what remainder, if any, should be raised by assessments upon the property benefited.

Such a public function as levying a tax for improvements required by the public necessity or convenience involves the exercise of judgment. Whether property abutting upon a street is in fact specially benefited by paving the street does not rest exclusively in the judgment or *"ipse dixit"* of the municipal officers who assert authority over municipal affairs, but it is a question of fact to be ascertained and established as any other fact and the proportion of the cost to be assessed against a *particular* lot *must* bear a reasonable and fair *relation* to the *special* benefits which actually accrue.

The law does not permit an arbitrary exercise of power as to the nature or extent of the improvement or as to any special assessment or apportionment made, either as between those who are or should be specially assessed for the improvement or as between those so assessed and the public or taxpayers of the community who are benefited by the improvement or who should bear a portion of the burden imposed. The amount of money which a govern-

ment has power to raise by taxation to administer the affairs of government is limited only by the necessities of the *government*. The amount which may be raised by special assessment for a local improvement is limited by the *actual* benefit which accrues to the property affected thereby. Besides this a special assessment must not be arbitrarily imposed or apportioned even if property is specially benefited by the improvement.

The above principles were recognized and applied and the above language employed to express them in the two opinions in the case of A. C. L. R. Co. v. Lakeland, 347 Fla. 94, 115 So. R. 669.

So far from following a rule for the ascertainment of special benefits which might accrue to the various lots abutting upon the streets to be improved, the ordinances each declared that the "*improvements* aforesaid be *made* at the *cost* of the owners of the lots or parcels of land abutting upon said improvements, which lots and parcels of land are hereby determined to be specially benefited by said improvements" and that the assessments when made should constitute a superior lien to all others except that for taxes. In those ordinances the city engineer was required, not to ascertain the reasonable cost of the improvement, but to make a statement of the cost of the work, to make a tabulation of the lots abutting upon the improvements and a tentative assessment against each according to the front foot.

To say that such legislation by a city council under the circumstances recited above is other than arbitrary and is in any manner consistent with the views expressed and the plain language used in the above cited case is merely to trifle with words and to ignore the doctrine of *stare decisis*. How the people of this State can by any process of rational thinking govern their conduct and order their business

relations and ascertain their political obligations, or how the bar, whose business it is to counsel and advise their clients, can conscientiously do so when principles of law announced and plain language used to express them in decisions of this Court, printed and published at great expense to the people, are ignored by administration officials, it is impossible to explain.

With the greatest deference to the judgment of my coworkers, I am constrained nevertheless to enter a mild protest against any process of reasoning by which the conclusion is reached that a city council and mayor of a municipal corporation in one evening may, consistently with the power vested in them in the imposition of lawful taxes for public improvements, decide to pave streets and sidewalks; enact ten or more ordinances and approve them, relating to the proposed work; determine that it shall be done at the cost of the property owners, which shall be apportioned on the basis of the front footage of the property abutting and provide for the expenditure in the plan of an estimated sum of a quarter of a million dollars or more, and determine without investigation the measure, or proportion of special benefit to accrue to each parcel of abutting property.

It cannot be said, with any regard for the meaning of words, that a predetermination of special benefits to any lot to be derived from a street grading and paving work is equal to the total cost of the proposed work, whatever that cost might be, is consistent with the principle of taxation for local public improvements, and is not arbitrary and not in violation of the taxing power.

Yet upon those ordinances the proposed bond issue of the City of Venice rests.

Pursuant to their requests for bids upon the proposed work notices were published; contracts made; the work

proposed to be done accomplished; the engineers tabulation made; the total cost of the work apportioned on the basis of the front footage of abutting property without any consideration or thought or investigation whatsoever as to what, if any, special benefit accrued or would accrue to the abutting property; entries were made in the Street Improvement Lien Book and liens upon the property sought to be created thereby.

Requests for bids on six of the projects were published in the Venice News between May 20th and 27th, 1927, and bids were required to be submitted on June 6, 1927. Bids on ten of the projects were published in the same newspaper between July 1st and 8th, 1927, and bids upon them requested to be submitted July 11, 1927. Affidavits as to all publications were made on the same day, January 30, 1928.

On November 28, 1927, the engineer's reports on ten of the projects were received and adopted and on December 5, 1927, his reports on six of the projects were received and adopted. The reports were dated November 28th and 29th respectively.

Notices to property owners as to the property affected by each project separately were published in the Venice News on December 8 and 15, 1927, and all property owners were allowed until December 19, 1927, to file objections to the acceptance of street improvements and within forty-five days from December 5, 1927, to file petitions with the city clerk raising any objections to the assessment for the improvements.

At the meeting of December 5th the property on Nokomis Avenue and Riviera Street were declared to be specially benefitted by the improvement and the total cost of it, according to the engineer's report, assessed against it.

December 26, 1927, some of the property owners own-

ing property affected by the different projects filed their protest against the assessment of the total cost of the improvements and prayed that a reduction of 10% be made. The council resolved then to reduce all the assessments 10%. Thereupon, Ordinance No. 113 was introduced, read three times, passed and approved, providing for the issuing of bonds in the sum of Three Hundred and Twenty-one Thousand ($321,000.00) Dollars.

On the 1st day of February, 1928, a petition was filed by the City of Venice in the circuit court for the validation of the issue by decree of the court. The proceedings were taken under Chap. 6868, Laws of Florida, 1915. Notice to taxpayers was issued and published. No one having appeared at the hour indicated in the notice, 10 o'clock A. M., on February 25th, the judge signed an order that the matters and things set forth in the petition be taken as confessed by the citizens and taxpayers of the City of Venice.

The State of Florida, however, by the State attorney, demurred to the petition. The grounds of the demurrer were very general with the exception of one. That was that the petition did not allege that the property upon which the assessments were made would be benefited by the improvements made. The demurrer was overruled.

On the 13th day of March, 1928, the court proceeded to take evidence upon issues presented by a petition which the court permitted citizens to file over the objection of the city's attorney. In that petition it was represented that the petitioners had purchased their lots from a corporation called the Venice Company, a subsidiary corporation to the Brotherhood of Locomotive Engineers; that the company had sold the lots under the agreement to pay the costs of all improvements for streets, sidewalks, curbs, etc; that the mayor of the city, councilmen and other city officials of

the city were at the time of all the proceedings referred to above officers, agents, servants and employees of the Venice Company; that the purpose of the ordinances and the intention of the city officials in projecting the improvements was to transfer the expense of the improvements described from the Venice Company to the individual property owners. It was also alleged that there was a great disparity between the benefits derived from the improvements to the lots and the assessment against them, the latter being much greater.

The evidence submitted amply supported the allegations of the petition of the citizens which was a protest against the validation of the bonds. It fully supported the chancellor's finding that the proposed improvements were undertaken by the city through means of a bond issue and a tax upon the property owners for the total cost as an aid to the B. L. E. Corporation and its subsidiary companies in relieving them of the obligations they had assumed to the purchasers of the lots affected by the improvements and that this piece of special legislation was accomplished through the interlocking directorate of the city and the real estate development corporations.

The chancellor recited in his decree that the petition of the citizens was treated by all the parties as an answer to the petition for an order of validation; that the assessments against the properties were commensurate with the benefits but that they were made for the benefit of private corporations and that the bonds sought to be issued were not primarily for the benefit of the public.

From that decree the city appealed.

I think the decree should be affirmed not only for the reasons set out in the first part of this opinion, but because the evidence amply supports the chancellor's conclusions that the purpose of the bond issue and the accomplishment

of the works of street improvement were primarily for the benefit of the real estate development corporations in relieving them temporarily or permanently of their obligations to the persons to whom they sold lots; that the entire scheme was conceived and executed with that purpose and was not therefore the legitimate exercise of the taxing power.

I do not agree with the finding that the assessments were commensurate with the benefits to be derived. There is not a single word of evidence in the entire record that any effort whatsoever was made by the officials to ascertain the fact of special benefits to a single piece of the property affected.

There is a long line of decisions of this court holding to the rule that where thre is substantial evidence to support the chancellor's findings they will not be disturbed by the appellate court, nor will his conclusions on facts be reversed unless it clearly appears that he has erred in such conclusions. See Waterman v. Higgins, 28 Fla. 660, 10 So. R. 97; Jacksonville v. Huff, 39 Fla. 8, 21 So. R. 774; McMillian v. Warren, 59 Fla. 578, 52 So. R. 825; Theisen v. Whiddon, 60 Fla. 372, 53 So. R. 642; Baxter v. Liddon, 62 Fla. 428, 56 So. R. 410; Farrell v. Forrest Investment Co., 73 Fla. 191, 74 So. R. 216; Guggenheimer v. Davidson, 74 Fla. 485, 77 So. R. 266; Simpson v. First National Bank, 74 Fla. 539, 77 So. R. 204; Whidden v. Rogers, 78 Fla 93, 82 So. R. 611; Kreher v. Morley, 84 Fla. 121, 92 So. R. 686; Kirkland v. Hutto, 85 Fla. 82, 95 So. R. 429 Phillips v. Howell, 88 Fla. 280, 102 So. R. 157.

The decree should be affirmed.

WHITFIELD, J. (dissenting):

While contracts for the purchase of lands involving the obligation of the vendors to furnish paving and other im-

provement to the lands that are included in a municipality, may not prevent the exercise of the municipal power to levy special assessments on the lands for pavements or other proper local public improvements, and the exercise of the governmental power may not relieve the vendors of their obligations to purchasers of lands to provide paving and other improvements as a part of the consideration for the purchase price for the lands, yet whereas in this case it appears that the municipal action for special assessments to provide the paving and other improvements was influenced by and participated in by agents or employes of the private corporation vendor who was obligated to provide the pavement, etc., such municipal action is thereby rendered invalid and ineffectual, even if the required formalities and orderly procedure had been observed in the municipal action taken in this case to issue bonds for paving and the levy of special assessments to pay the bonds. The municipal power to levy special assessments cannot be utilized to relieve, supersede or postpone the obligations of persons or corporations to provide local public improvement that might otherwise be provided for by special assessments where the municipality acts within the requirements of law uninfluenced by unlawful considerations.