## CITY OF CORAL GABLES v. HAYES.
### No. 7339.

Circuit Court of Appeals, Fifth Circuit. Feb. 6, 1935.

990

Morton B. Adams, of Miami, Fla., for appellant.

K. D. Harris, of Miami, Fla., for appellee.

Before SIBLEY, HUTCHESON and WALKER, Circuit Judges.

SIBLEY, Circuit Judge.

Gordon B. Hayes sued city of Coral Gables at law on certain bonds and interest coupons payable to bearer. No question of jurisdiction was raised. Certain pleas were filed, but all were stricken, except one alleging that the plaintiff is not the bearer and owner of the bonds and coupons sued on. The city on January 8, 1934, claimed a right of jury trial, and requested a setting of the case under rule 14 of the District Court which provides for a fixing of a day "far enough in advance to enable the parties to procure their witnesses or have their depositions taken." January 15th was fixed. On that date the city made a written motion for continuance, asserting that it had been unable to procure the attendance of witnesses to prove its defense or to take their depositions, but not stating what, if any, efforts had been made. Only one witness was named, and by him the only fact expected to be proved was that Hayes was not the true owner of the instruments, but at most a representative of him. It was not stated where this witness lived, or that he had been subpoenaed, or any reason why he had not been. The motion was overruled. Jury trial was then waived, and, the bonds and coupons being put in evidence, the judge found for the plaintiff and entered judgment. The city's appeal complains of the early setting of the case, the refusal to continue it, and the striking of its pleas.

There is no bill of exceptions. We do not know what happened when the date for trial was fixed, or that any objection was made. There are some recitals about it in the motion for continuance later filed, but they are uncertified by the judge. The same trouble exists touching the ruling on the motion for continuance. The motion and order on it, which recites an exception taken, are certified here as parts of the record. If we consider them as a sufficient substitute for a bill of exceptions, we find no abuse of discretion shown. Only one witness was alleged to exist, and no effort to secure his presence or his deposition appeared. If present, his testimony would have done no good. The plaintiff's honest possession of the instruments payable to bearer showed a right to collect them, whether as owner or as the representative of the owner. Unless the city had some other defense, the issue on trial was immaterial. Gregory v. McNealy, 12 Fla. 578; Jones v. Central Hanover Bank & Trust Co., 110 Fla. 69, 147 So. 895.

The stricken pleas set up in substance that the bond issue was fraudulent because four of the five city commissioners who adopted the ordinance for the paving and for the bonds were officers of the Coral Gables Corporation, a private company which was already bound to purchasers of lots by contracts to make the identical improvements which were made with the proceeds of the bonds, and because the bond issue was induced by an exhibited proposal in writing made by Coral Gables Corporation to the city commissioners; and that the whole proceeding was a sham and subterfuge to lend the city's credit and taxing power to the Coral Gables Corporation contrary to sections 7 and 10 of article 9 of the Constitution of Florida; that the corporation had paid the city 97 cents on the dollar for the bonds, the minimum price under the charter; and that the plaintiff is not a bona fide owner and bearer of them. The epithets "fraudulent" and "sham" and "subterfuge" are not allegations of fact. The exhibited "proposal" which is alleged to have preceded the paving ordinance is a long and apparently sincere written argument by Coral Gables Corporation addressed to the com-

missioners, calling attention to the charter power of the city to pave its streets and sidewalks by making assessments on abutting lots payable in annual installments, and to issue bonds against the assessments, and urging that benefit would result to the community as well as the property owners in having the work done as a whole and immediately, that the Coral Gables Corporation actually is paying over 50 per cent. of the city's taxes, and owns much of the property to be assessed, that it has contracts with the purchasers of its lots to pave streets and sidewalks, and is able and intends to carry out its obligations, but the work can be done more extensively, more cheaply, and more quickly by the city, with benefit to the whole community. The pleas do not negative any fact thus stated nor allege any that would show that the commission did not decide to issue bonds in good faith and for the good of the whole community. Neither the ownership by a commissioner of lots to be assessed nor his official connection with a corporation which owned such lots would disqualify him. If the fact that municipal legislators would be affected along with the other citizens prevents their legislating, even a tax ordinance or a water rate could never be passed. Steckert v. East Saginaw, 22 Mich. 104, is in point. The charter (Sp. Laws of Florida of 1925, sections 49 to 65 of chapter 10418 as amended by chapter 10419, §§ 3 to 19), authorizes the city to pave any or all of its streets by assessing adjoining lots for installment payments, and to provide immediate cash by a bond issue to be sold at not less than 97. The resolution to assess is required to be published, and the assessment roll when made must also be published, together with a notice to all property owners affected to appear at a time and place fixed for complaints. Such publicity leaves small opportunity for fraud. Nor does it appear how Coral Gables Corporation could get any unjust advantage from the action. Its lots, sold and unsold, would be assessed like those of others, and it in fact furnished the cash to do all the work by buying the bonds. It bought them below par, but according to the pleas resold them at a loss. The particular transaction of sale of the bonds by commissioners interested on both sides of it might open it up for an account if any profits had been made, but would not justify the city in refusing to pay bonds whose proceeds it got and used. The pleas are insufficient to show that the bonds are void for actual or constructive fraud.

The Florida Constitution, art. 9, §§ 7 and 10, forbids the laying of any tax for the benefit of any chartered company or to pay interest on the bonds of such company; and forbids the authorization of any city to obtain or appropriate money or to loan its credit to any corporation or individuals. But this is not done when a city determines to issue its own bonds to pave its own streets, although one of the lot owners to be affected is a corporation which previously intended, or had agreed with other lot owners, to pave in front of its and their lots. Although the city's paving tends to relieve the corporation from an immediate outlay by substituting the assessments made against the lots, still the paving and the issuance of the bonds to pay for it are proper municipal acts for proper municipal purposes, and are not contrary to the Constitution. City of Venice v. State, 96 Fla. 527, 118 So. 308; Hunter v. Owens, 80 Fla. 812, 86 So. 839. In the case of State v. Hillsborough County, 113 Fla. 345, 151 So. 712, the paving was alleged to have been of streets in a private subdivision which were no part of the county highway system. The court held that bonds for paving such streets should not be validated, but, if the paving was of existing county highways, they should be. The bonds here in question have been validated under the Florida statute, but, since we hold that there was no defense which could have prevented their validation, there is no occasion to deal with the effect of the judgment of validation.

We have dealt with the case as it has been argued, but we greatly doubt the competence of a court to try collaterally an issue of fact as to the motives with which a legislative ordinance of a city was passed, except as purpose is disclosed on the face thereof or by inference from its necessary operation. In the famous case of Fletcher v. Peck, 6 Cranch, 87, 3 L. Ed. 162, it was sought to impeach for corruption of the Legislature an act which granted about half the territory of Georgia; but it was held that a court could make no such inquiry. On the same line see United States v. Des Moines R. R. Co., 142 U. S. 510, 545, 12 S. Ct. 308, 35 L. Ed. 1099; Angle v. Chicago R. R. Co., 151 U. S. 3, 17, 14 S. Ct. 240, 38 L. Ed. 55. That a public treaty cannot thus be attacked see United States v. Old Settlers, 148 U. S. 427, 468, 13 S. Ct. 650, 37 L. Ed. 509; Ansley v. Ainsworth, 4 Ind. T. 308, 69 S. W. 885; or a legislative divorce, Jones v. Jones, 12 Pa. 350, 51 Am. Dec. 611. Similar holdings as to a municipal Legislature

are found in Soon Hing v. Crowley, 113 U. S. 703, 5 S. Ct. 730, 28 L. Ed. 1145; Jersey City & Bergen R. R. Co. v. Jersey City & Hoboken H. R. Co., 20 N. J. Eq. 62; Bartlett v. Kinsley, 15 Conn. 327, 333; Villavaso v. Barthet, 39 La. Ann. 258, 1 So. 599; Crutchfield v. Car Works, 8 Baxt. (Tenn.) 245; Murphy v. Chicago Ry. Co., 247 Ill. 615, 93 N. E. 381; State ex rel. City of Vicksburg v. Wash. Steam Fire Co., 76 Miss. 449, 24 So. 877; 19 R. C. L., Municipal Corporations, § 197. Since we hold that the facts alleged make no sufficient showing of fraud or purpose to misuse the city's taxing power and credit, we have not found it necessary to decide the point.

Judgment affirmed.