HILLSBOROUGH COUNTY, FLA., v. KEEFE.*

SAME v. BUCK.

SAME v. EQUITABLE LIFE INS. CO. OF IOWA (two cases).

Nos. 7728–7730, 7786.

Circuit Court of Appeals, Fifth Circuit.

Feb. 17, 1936.

H. C. Tillman, G. L. Reeves, and John B. .Sutton, all of Tampa, Fla., for appellant.

F. P. Fleming, of Jacksonville, Fla., for appellee Keefe.

W. H. Watson, S. Pasco, and C. J. Brown, all of Pensacola, Fla., for appellee Buck.

F. P. Fleming and J. M. Bryant, both of Jacksonville, Fla., for appellee Insurance Co.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

Chapter 10140 of the Laws of Florida of 1925 purports by description rather than by name to empower Hillsborough county to improve its highways through voluntarily formed road districts by issuing the county's general bonds, supported by general tax levies, with assessment of 75 per cent. or more of the cost against the benefited property in the district; the assessments as collected to be used to reduce the taxes. In 1926 and 1927 in several such districts roads were improved, and negotiable county bonds were issued which before sale to the public were validated and a certificate of validation was entered on each pursuant to Comp.Gen.Laws Fla.1927, §§ 5106–5112. Each bond contains these recitals: "This bond is one of a series issued under the authority of and in full compliance with Chapter 10140, Laws of Florida, 1925, for the purpose of paying the cost of certain highway improvements within and for said County. It is hereby certified and recited that all acts, conditions and things required by the Constitution and Laws of Florida to happen, exist and be performed precedent to and on the issuance of this bond have happened, exist and have been performed in regular and due form and time as so required." After default four suits were brought on such bonds in the District Court against the county by bona fide holders for value without notice. The county by demurrer challenged the constitutionality of chapter 10140. The demurrer was overruled. Pleas were entered of facts thought to show an unconstitutional use of chapter 10140 in making these bonds, but on further demurrer the pleas were held not good against estoppels arising from the validation and from the recitals of the bonds. The county declined to plead further, and judgments were entered against it. On appeals therefrom the questions just indicated are for decision.

In 1930 a taxpayer of Hillsborough county brought in question the constitutionality of the act as respects the State Constitution in an effort to enjoin the county from collecting taxes to pay the bonds. The act was upheld by the Supreme Court of Florida. Whitney v. Hillsborough County, 99 Fla. 628, 127 So. 486, 491. Since the parties here are different, the decision does not make res adjudicata all question of conflict with the State Constitution, but it is authority controlling upon the federal courts as to the particular questions of state law actually considered and decided. The county now urges as a point not then decided this: The act authorizes general bonds and taxes to pay for improvements in which 100

per cent. of the cost is to be assessed against specially benefited private property, and since the property could not lawfully be assessed beyond the benefits to it, it is said in such a case that the whole benefit must be to the private property, and that streets even in privately owned subdivisions may be improved, and the purpose of the tax may be not a public one, to which county taxation is limited by article 9, § 5, of the State Constitution; and since the benefited property may be owned by chartered companies, the bonds would become a lending of the county's credit to such companies contrary to article 9, § 10, of the Constitution; and yet further the property of the general taxpayer is thus authorized to be taken for the benefit of these property owners with such fundamental unfairness as to deny due process of law under the Fourteenth Amendment of the Constitution of the United States. We think the purpose and operation of the statute are misconceived. The Supreme Court said in the Whitney Case: "The act itself is not amenable to the criticism that it authorizes the levy of a tax for other than county purposes." Its title is: "An Act to Authorize Counties * * * to Improve Highways Upon Petition and to Pay the Cost Thereof by Special Assessment in Whole or in Part and to Issue Bonds and Levy Taxes." The preamble recites that it is intended to give additional and supplemental powers "for the improvement of county highways." The first section of the act names it the "County Highway Assessment Act." In the second section petitions of landowners are authorized to form districts "to grade, pave, curb or gutter any continuous portion of a single highway or two or more connecting highways." While the term "improvement" is generally used thereafter, we think it abundantly clear that only county highways are authorized to be improved. By all definitions "highway" means a public road and not a private way. Southern R. Co. v. Combs, 124 Ga. 1004, 53 S.E. 508; Wood v. Concord, 268 Mass. 185, 167 N.E. 311; Detroit Bridge Co. v. American Seed Co., 249 Mich. 289, 228 N.W. 791; State v. District Court, 80 Mont. 228, 260 P. 134. The care and maintenance of the county "highways" as well as the establishment of new ones is placed in the county commissioners. Comp. Gen.Laws Fla.1927, §§ 2153, 2436, 2445.

These are the officers who are to take action under chapter 10140. As noted in the Whitney Case: "The petition of the property owners is a mere request. The county commissioners are not required to grant the petition, but have the power and discretion either to order such improvement or to reject the petition." They should reject it if it relates to ways or streets which are not county highways, and they should reject it if in their opinion the public benefit from the proposed improvement will not be such as to warrant the county in undertaking it. That the adjacent property will be specially benefited and its owners are willing to be specially assessed to help pay for the work does not prevent it from being a public work. Such special benefits accompany the improvement of every street or road. That such owners may be willing to be assessed for the whole cost operates to relieve any question of overassessment that otherwise might have been raised by them, but it does not demonstrate that there is not also benefit to the public. The improvement of a county highway is in its very nature a public work and the execution of a county purpose. That some of the property owners who are to be benefited and who consent to be assessed are chartered companies does not involve an unconstitutional lending of the county's credit to them. The enterprise which the county undertakes and for which it issues its bonds remains a county enterprise. The special assessment to which the chartered company submits is, like the assessment on natural persons, its special contribution equitably to be paid in addition to its general tax. Such a thing happens when a municipality by its own means or credit improves a street and assesses corporate owners of property to contribute to the city's reimbursement; but there is no unconstitutionality therein. City of Coral Gables v. Hayes (C.C.A.) 74 F.(2d) 989; City of Venice v. State, 96 Fla. 527, 118 So. 308; Hunter v. Owens, 80 Fla. 812, 86 So. 839. Chapter 10140 may be liable to abuse, in that county commissioners may be lured by an offer of property owners to be assessed for all or nearly all of the cost to embark the county upon an improvement which the public interest does not really require. The notice and hearing which it affords to all taxpayers are the safeguards provided

130

against such abuse. Of the wisdom of the act courts do not judge. It is not for the reasons here urged unconstitutional.

■ The stricken pleas say in effect that though the act be constitutional, it was unconstitutionally used in issuing these bonds, because the roads improved were in fact not county highways but streets in private subdivisions owned largely by chartered companies who alone were benefited by the improvements, and that the bonds are void notwithstanding their validation and their recitals. There is also a plea that in 1933 Hillsborough county was issuing new bonds to refund, among others, those in suit, and in a proceeding to validate the new bonds the state resisted by pleading the facts just stated in order to show that the old bonds were invalid notwithstanding they had been validated when issued; and on appeal the Supreme Court had held the defense good against demurrer. State v. Hillsborough County, 113 Fla. 345, 151 So. 712. We will consider first the last-stated plea. There is plainly no res adjudicata, for no bondholder was a party to that litigation and the cause of action was not upon the old bonds but to validate new ones. The Supreme Court especially noted that the holders of the old bonds were not before it, and there could be no adjudication of the validity of the old bonds. It held that the existence of a substantial objection to their validity was enough to prevent the validation of new refunding bonds until the objection should be decided in proper litigation with the old bondholders. Such a litigation these suits are. The pleaded decision can be only persuasive authority, and is in itself no defense.

■ The Supreme Court did say, citing its decision in Weinberger v. Board of Public Instruction, 93 Fla. 470, 112 So. 253, that a Florida validation proceeding does not cut off a defense of constitutional invalidity of the bonds such as is here urged, if the question was not actually raised and adjudicated in the validation proceeding. In neither case, however, was a bona fide purchaser of bonds before the court. The Florida Validation Act, Comp.Gen.Laws Fla.1927, §§ 5109, 5110, declares very positively that a decree of validation is to be conclusive against the county, and that a certificate of validation shall be placed on the bonds.

On a question of impairment of the bond contract, a federal court might be bound to examine for itself the meaning and effect of these provisions of the statute. But it is not necessary in this case, because aside from validation, on principles well settled in the federal courts and in those of Florida the recitals of the bonds estop the county as against purchasers who relied on them as these plaintiffs are conceded to have done. The bonds say that they were issued to improve highways within the purview of chapter 10140, and there is nothing on their face to give any notice to the contrary. The county commissioners, who by their chairman and clerk signed the bonds, have charge of the highways, and may be supposed to know them. There is no public register of highways to which a purchaser of the bonds could look, even if he knew for what project his bonds were issued. Highways may have their origin in prescription, and in dedication and acceptance, as well as in proceedings of public record. Couture v. Dade County, 93 Fla. 342, 112 So. 75; Southern R. Co. v. Combs, 124 Ga. 1004, 53 S.E. 508. Even when a formal statutory procedure for establishing highways exists, they may arise otherwise. Penick v. Morgan County, 131 Ga. 385, 62 S.E. 300. Whether roads to be improved are or are not highways is a matter of fact within the authority of the county commissioners to determine and declare. Their certificate about it in the bond relied on by a purchaser cannot be repudiated. In like manner the purpose of the improvement which the commissioners authorize is a matter known to them, and what they certify about it, whether truly or falsely, creates an estoppel in favor of those who act upon the faith of it. Board of Public Instruction v. Tanger Inv. Co. (Fla.) 164 So. 697; State v. Rodes, 115 Fla. 259, 151 So. 289, 155 So. 852; Crawford, Mayor, v. Klemm & Son, 110 Fla. 301, 149 So. 340; Hackett v. Ottawa, 99 U.S. 86, 25 L.Ed. 363; Gunnison County v. Rollins & Sons, 173 U.S. 255, 19 S.Ct. 390, 43 L.Ed. 689; Waite v. Santa Cruz, 184 U.S. 302, 22 S.Ct. 327, 46 L.Ed. 552; West Plains v. Sage (C.C.A.) 69 F. 943. The pleas were no sufficient answer, and were rightly stricken, and judgments were rightly entered upon the bonds.

Judgments affirmed.