STATE and GEORGE F. CORRIGAN, et al., Intervening Taxpayers, v. COUNTY OF HILLSBOROUGH

151 So. 712.
Division B.
Opinion Filed December 23, 1933.

346

*J. Rex Farrior,* State Attorney, *Charles I. Campbell* and *Curtis L. Sparkmen,* for Appellants;

*Henry C. Tillman* and *John B. Sutton,* for Appellee.

BUFORD, J.—This case is before us on an appeal from an order validating a refunding bond issue sought to be issued and floated by Hillsborough County. The State of Florida, through the State's Attorney and certain intervening taxpayers, protested the validation of the bond issue. The principal grounds of protest were, and are, that cetrain original issues of bonds now sought to be refunded were illegal and not binding obligations of the County of Hillsborough.

These original bonds were issued under the provisions of Chapter 10140, Acts of 1925.

That Act was held valid as to all questions there presented in the case of Whitney v. Hillsborough County, 99 Fla. 628, 127 Sou. 486.

The record also shows that the issues of bonds here attacked were validated by decrees of the Circuit Court which were not appealed from.

. We think that this leaves only one question open for our further consideration.

. Answers were filed by the States Attorney on behalf of the State and by certain intervening taxpayers. The two answers are much alike.

. The answer of the States Attorney alleges:

"That the bonds described in Paragraph 5, under Section 1 of said Resolution were issued for the payment of costs for paving improvements in Elizabeth Court Subdivision; that all of the said property in said subdivision was owned by a private corporation with an assessed valuation of said lands of only $5100.00, whereas county-wide bonds were issued for $116,000.00, to pay for said improvements, that being the entire estimated cost thereof; that the streets or roads in said subdivision which were paved in such manner and at such cost are no part of the county highway system; that said expenditures were inexpedient, unnecessary and not for a county purpose, that the taxpayers in general had no opportunity for voting on said bond issue, that no election was held therefor as required by law; that the issuing of county-wide bonds and levying a general tax to pay these bonds is the levy of a tax for the benefit of a private corporation, contrary to Article 9, Section 7, of the Constitution inasmuch as the improvements were upon roads lying wholly within a private subdivision and upon roads tra-

versing the lands owned entirely by said corporation, to-wit: Elizabeth Court, Inc., a corporation, which roads were no part of the county highway system generally, and not necessary to meet the demands of public travel.

"This Respondent alleges that the bonds described in the paragraph marked (6) of Section 1, of said Resolution were issued under Chapter 10140, Laws of Florida of 1925, to pay the cost of paving improvements on streets in a subdivision known as Bel-mar; that there were several petitions seeking these improvements originally as follows:

"A. Bel-mar Unit No. 1: That all of said property in said subdivision was owned by a private corporation with an assessed valuation of said lands of only $1200.00, whereas county-wide bonds were issued for $67,000.00 to pay for said improvements, that being the entire estimated cost thereof; that the streets or roads in said subdivision which were paved in such manner and at such cost are no part of the county highway system; that said expenditures were inexpedient, unnecessary and not for a county purpose; that the taxpayers in general had no opportunity for voting on said bond issue, that no election was held therefor as required by law; that the issuing of county-wide bonds and levying a general tax to pay these bonds is the levy of a tax for the benefit of a private corporation, contrary to Article 9, Section 7, of the constitution of Florida, inasmuch as the improvements were upon roads lying wholly within a private subdivision and upon roads traversing the lands owned entirely by said corporation, to-wit: Lloyd-Skinner Development Company, a corporation, which roads were no part of the county highway system generally, and not necessary to meet the demands of public travel.

"B. Bel-Mar Units Nos. 2 and 3: The assessed valuation of all the lands described in the original petition seek-

ing paving improvements in these units was $2400.00, of which Lloyd-Skinner Development Company, a corporation, owned lands of the assessed valuation of $2300.00, or 23/24 thereof; that the estimated cost of improvements was $142,000.00 and county-wide bonds issued in said amount to pay for said improvements; that the streets or roads in said subdivision which were paved in such manner and at such cost are no part of the county highway system; that said expenditures were inexpedient, unnecessary and not for a county purpose; that the taxpayers in general had no opportunity for voting on said bond issue, that no election was held therefor as required by law; that the issuing of county-wide bonds and levying a general tax to pay these bonds is the levy of a tax for the benefit of a private corporation, contrary to Article 9, Section 7, of the Constitution of Florida inasmuch as the improvements were upon roads lying wholly within a private subdivision and upon roads traversing the lands owned 23/24 by said corporation, to-wit, Lloyd-Skinner Development Company, a corporation, which roads were no part of the county highway system generally, and not necessary to meet the demands of public travel.

"C. Bel-Mar Units Nos. 4, 5, 6 and 7. The assessed valuation of all the lands described in the original petition seeking paving improvements in these units was $3200.00, of which Lloyd-Skinner Development Company, a corporation, owned lands of the assessed valuation of $3185.00, or approximately 99½% thereof; that the estimated cost of improvements was $356,000.00, and county-wide bonds issued in said amount to pay for said improvements; that the streets or roads in said subdivision which were paved in such manner and at such cost are no part of the county highway system; that said expenditures were inexpedient,

unnecessary and not for a county purpose; that the tax-payers in general had no opportunity for voting on said bond issue, that no election was held therefor as required by law; that the issuing of county-wide bonds and levying a general tax to pay these bonds is the levy of a tax for the benefit of a private corporation, contrary to Article 9, Section 7, of the Constitution of Flórida inasmuch as the improvements were upon roads lying wholly within a private subdivision and upon roads traversing the lands owned approximately 99½% by said corporation, to-wit, Lloyd-Skinner Development Company, a corporation, which roads were no part of the county highway system generally, and not necessary to meet the demands of public travel.

"D. Bel-Mar Unit No. 8. That all of said property in said subdivision was owned by a private corporation with an assessed valuation of said lands of only $1680.00, whereas county-wide bonds were issued for $81,000.00, to pay for said improvements, that being the entire estimated cost thereof; that the streets or roads in said subdivision which were paved in such manner and at such cost are no part of the county highway system; that said expenditures were inexpedient, unnecessary and not for a county purpose; that the taxpayers in general had no opportunity for voting on said bond issue, that no election was held therefor as required by law; that the issuing of county-wide bonds and levying a general tax to pay these bonds is the levy of a tax for the benefit of a private corporation, contrary to Article IX, Section 7, of the Constitution of Florida, inasmuch as the improvements were upon roads lying whólly within a private subdivision and upon roads traversing the lands owned entirely by said corporation, to-wit, Lloyd-Skinner Development Company, a corporation, which roads were no

part of the county highway system generally, and not necessary to meet the demands of public travel.

"E.   Bel-Mar Unit No. 9.   The assessed valuation of all the lands described in the original petition seeking paving improvements in this unit was $28,846.72, of which Lloyd-Skinner Development Company, a corporation, owned lands of the assessed valuation of $28,539.84, or approximately 99% thereof; that the estimated cost of improvements was $152,000.00 and county-wide bonds issued in said amount to pay for said improvements; that the streets or roads in said subdivision which were paved in such manner and at such cost are no part of the county highway system; that said expenditures were inexpedient, unnecessary and not for a county purpose; that the taxpayers in general had no opportunity for voting on said bond issue, that no election was held therefor. as required by law; that the issuing of county-wide bonds and levying a general tax to pay these bonds is the levy of a tax for the benefit of a private corporation, contrary to Article IX, Section 7, of the Constitution of Florida inasmuch as the improvements were upon roads lying wholly within a private subdivision and upon roads traversing the lands owned approximately 99% by said corporation, to-wit, Lloyd-Skinner Development Company, a corporation, which roads were no part of the county highway system generally, and not necessary to meet the demands of public travel.

"F.   Bel-Mar Unit No. 11.   The assessed valuation of all the lands described in the original petition seeking paving improvements in this unit was $1,380.00 of which Lloyd-Skinner Development Company, a corporation, owned lands of the assessed valuation of $1,320.00, or approximately 96% thereof; that the estimated cost of improvements was $87,000.00 and county-wide bonds issued in said amount to

pay for said improvements, that the streets or roads in said subdivision which were paved in such manner and at such cost are no part of the county highway system; that said expenditures were inexpedient, unnecessary and not for a county purpose; that the taxpayers in general had no opportunity for voting on said bond issue, that no election was held therefor as required by law; that the issuing of county-wide bonds and levying a general tax to pay these bonds is the levy of a tax for the benefit of a private corporation, contrary to Article IX, Section 7, of the Constitution of Florida inasmuch as the improvements were upon roads lying wholly within a private subdivision and upon roads traversing the land owned approximately 96% by said corporation, to-wit, Lloyd-Skinner Development Company, a corporation, which roads were no part of the county highway system generally, and not necessary to meet the demands of public travel.

"G. Belle Vista Subdivision. Among the bonds referred to in the preceding paragraphs under 'IX' of this answer are those issued for the paving of one street in Belle Vista Subdivision, originally petitioned for by Lloyd-Skinner Realty Company, a corporation; the assessed valuation of the property described was $7,520.00, of which said corporation and W. G. Brorein, co-petitioners, owned property to the value of $5,140.00, whereas the estimated cost of improvements was $17,000.00 and county-wide bonds issued in said amount to pay for the cost thereof. This respondent alleges that said street was no part of the county highway system and the paving thereof was inexpedient, unnecessary and not for the public good or the demand of public travel, but wholly for the benefit of the owners of property abutting said street.

"H. Palma Vista Subdivision. Among the bonds re-

ferred to in the preceding paragraphs under 'IX' of this answer are those issued for the paving of streets in a subdivision known as Palma Vista Subdivision, originally petitioned for by Lloyd-Skinner Realty Company, a corporation; the assessed valuation of the property described was $31,600.00, of which said corporation, petitioner, owned property to the value of $28,800.00, or approximately 90% thereof, whereas the estimated cost of improvements was $137,000.00, and county-wide bonds issued in said amount to pay for the cost thereof. This respondent alleges that said streets are no part of the county highway system and the paving thereof was inexpedient, unnecessary and not for the public good or the demand of public travel, but wholly for the benefit of the owners of property abutting said street.

"X. Further answering, this respondent in showing cause why the petition should not be granted validating and confirming the proposed refunding bond issue of $1,951,000.00, here alleges each and every allegation not hereinabove specifically alleged which is contained in the answer of said intervening taxpayers relating to the invalidity of the outstanding bonds described in paragraphs marked (7), (8), (9) and (10) of Section 1 of said resolution attached as exhibit 'A' to the original petition filed herein by plaintiff, as well as those allegations showing, or tending to show, that the improvements, for the payment of which said bonds were issued, were made upon streets in private subdivisions, which improvements were not expedient, or necessary, and were not upon roads which were a part of the county highway system, and not in demand for public travel, and showing the illegal and arbitrary action of the county commissioners causing county-wide bonds to be issued for the

payment of said improvements, as specifically as here re-alleged and incorporated herein *in haec verba."*

These allegations may not necessarily be such matters of defense as may have been set at rest by a decree validating the bonds. The proof of these allegations would be sufficient to cast a grave doubt as to whether or not the bonds were issued for a county purpose, or were issued for any purpose for which the Legislature could have authorized the issuance of the bonds by the county, or for a purpose for which a court of this State could have determined them to be valid and binding obligations upon the county. This doubt, if established, would be sufficient to defeat the validation of bonds sought to be issued to refund such original bonds. The validity of the original bonds cannot be determined in this cause because of lack of jurisdiction of parties holding such bonds. In Whitney v. Hillsborough County, *supra,* we said:

"The delegation of the power under such circumstances is tantamount to the State empowering not a mere statutory board possessing no governmental status but a constitutionally recognized governmental agency to act for it in matters of local taxation. The power, when granted by the Legislature to a county, is exercised in effect by the people acting through their representatives directly chosen by them at the polls for that purpose. The constitutional limitation upon the power is that the tax shall be imposed 'for county purposes and for no other purposes.' Board of Commissioners of Escambia County v. Board of Pilot Commissioners, 52 Fla. 197, 42 So. R. 697; Wright v. House, 121 N. E. R. 43; Stoppenbach v. Multonomah County, 142 Pac. R. 832; Cooley, Taxation (4th Ed.), Sections 75, *et seq.,* 119, 162; Cooley, Const. Lim. (7th Ed.), p. 165."

See also State, *ex rel.* Nuveen v. Greer, *et al.*, 88 Fla. 249, 102 Sou. 739.

An Act of the Legislature may be constitutional but it may be applied in a manner which invokes an unconstitutional result.

In Getzen v. Sumter Co., 89 Fla. 45, 103 Sou. 104, we said:

"The intent of the Constitution is that the taxing power shall be exercised only as authorized by controlling law for an appropriate public purpose, and only to the extent that a proper public purpose may be accomplished without violating property rights of the taxpayers.

"An abuse of an arbitrary or unreasonable exercise of a power conferred by law, is not within the intendments of the law, organic or statutory; and the Constitution requires the courts to give a 'remedy' 'for any injury done' to personal or property rights, which includes an injury caused by an arbitrary or an unreasonable exercise of authority conferred, as well as by action taken without any authority whatever.

The right to exercise the power of taxation is limited to appropriate public purposes and when not controlled by a prescribed rule, the nature and extent of a tax levy, or of any action taken involving or necessitating a tax levy, should be determined by a due consideration of controlling provisions and principles of law and of the organic property rights of the tax payers as well as of the reasonable requirements of the public welfare.

"The organic rights to protect property and to obtain redress for injuries are secured against abuses in the exercises of authority involving tax levies by administrative officers as well as against abuse by the Legislature.

"The intent of organic or statutory provisions is the essence of the law and such intent may be shown by the impli-

cations and intendments as well as by the words of express provisions; and implied provisions of organic or statutory law are as effective as the express provisions when such implied provisions are judicially declared to exist."

"While the statute authorizes the county commissioners to 'determine' 'what amount of bonds is required' for a county purpose, and does not expressly limit the amount of bonds that may be issued by a county for any or all county purposes, yet the statute by necessary intendment does not authorize the issue of an amount of county bonds that would be unreasonable with reference to the organic property rights of taxpayers and to the just requirements of the public purpose contemplated."

See Citizens Savings & Loan Association of Cleveland v. Topeka City, 22 Law Ed. 455; Parkersburg v. Brown, 27 Law Ed. 238; St. Paul Trust & Savings Bank v. American Clearing Co., 291 Fed. 212; Weinberger v. Board of Public Instruction, 93 Fla. 470, 112 Sou. 253. In the latter case we said:

"When a board of public instruction attempts by resolution to fix the maturities of special tax school district bonds contrary to an express and continuing requirement of the Constitution, such bonds are void *ab initio* and a taxpayer who is otherwise entitled so to do, but who did not intervene and object to such bonds in a statutory validation proceeding in which a decree purporting to validate such bonds was entered is not thereby barred from subsequently asserting against the issuance of such bonds, the mandatory and continuing command of the Constitution prohibiting the issuance of such bonds with maturities as prescribed in the resolution, even though such taxpayer, at his election, might have intervened and raised the point in the statutory validation proceeding."

And so, following the rule there expressed, we conclude that the intervenors here who did not intervene and object to the statutory validation of the bonds above referred to in which proceedings a decree purporting to validate such bonds was entered and not thereby barred from asserting against the issuance of refunding bonds the Constitutional infirmity of the original bonds and thereby presenting for adjudication the question of whether or not a court of equity should enter a decree validating a bond issue proceeding to refund the original issues and thereby foreclosing the taxpayer from litigating the validity of the original bonds in a suit in which that issue may be adjudicated.

The statutes of Florida which authorize the issuance and validation of county refunding bonds as general county obligations, contemplate that the original debts or obligations proposed to be refunded shall not be subject to any substantial legal objection as to their validity or enforceability against *the county* as general county obligations. If substantial legal defenses to the obligations proposed to be refunded are made to appear in a proceeding brought to validate refunding bonds based thereon, either by the State's Attorney or by intervention of individual tax payers, the court having authority to validate the refunding bonds should withhold its validation decree concerning those bonds which are sufficiently objected to, until such time as the objections raised, if substantial and so determined by the court to be of that character, can be put at rest in a proceeding in which the bondholders and the county, as obligor, can be made parties and the issue finally adjudicated. This cannot be accomplished in a validation proceeding involving only the refunding bonds, because the holders of the original obligations proposed to be refunded, not being parties to the refunding bond validation proceeding, cannot be

bound by the court's determination (if made in such proceeding) that the original obligations are invalid. But in the validation proceeding the court having jurisdiction of the obligor and those in privity of obligation with it, may make such investigation and arrive at such decision on the issues as *against* the county and intervening tax payers, as to set at rest the validity of the refunding bonds, if in the validation proceeding the court determines from the pleadings and evidence, or both, that the objections raised as to the validity of the obligations proposed to be refunded are not substantial or well founded in law or fact on the record made in the refunding bond validation proceeding.

The allegations of the respective answers are sufficient to raise a substantial question as to whether or not the original bonds were issued for a lawful public purpose, or issued primarily as a result of a plan of the County of Hillsborough to lend its credit to certain private business enterprises, the same being the development of subdivisions for the purpose of making it possible for those subdivisions to acquire improved streets without the present outlay of large sums of money and with the county assuming the obligation to pay for such street improvements in the event the promoters, owners and purchasers of lots in such subdivisions fail to pay for the same. If it should develop that the bonds were issued primarily for a public purpose and to improve highways already existing forming a part of the highway system of Hillsborough County, then the bonds were valid obligations of the county. But, if such bonds were issued primarily for the benefit of, and to assist in, the development of private business enterprises in the nature of subdivisions which were being promoted and sold for profit and to lend the credit of the county to such subdivisions to procure paving to make their business propo-

sition more attractive and to save such subdivisions the necessity of present outlays of cash and to assume by the county the payment for such improvements in the event that the owners, promoters and lot owners in such subdivisions fail to pay the assessments levied, then such bonds would be void as general obligations of the county, though they might remain valid documents evidencing the interest which the holders thereof have in the funds which may be derived from the special assessment levied and collected in the respective subdivisions.

For the reasons stated, the decree should be affirmed as to the validity of the refunding bonds sought to be issued not challenged by the above quoted paragraphs of the answer and not challenged by like paragraphs in other answers filed; and the decree should be reversed as to the validation of bonds sought to be issued to refund the outstanding bonds referred to in such paragraphs of the answer, with directions that the motion to strike these paragraphs of the answer be vacated and an order be entered requiring the relators to plead further to such paragraphs of the answer and that such further proceedings be had as may be in accordance with law and equity.

It is so ordered.

Reversed in part.

DAVIS, C. J., and ELLIS and TERRELL, J. J., and HUTCHISON and JOHNSON, Circuit Judges, concur.

WHITFIELD, J., disqualified.

BROWN, J., absent and not participating on account of illness.