STATE, *et al.,* v. TOWN OF BELLEAIR.

170 So. 434.
Division B.
Opinion Filed August 5, 1936.
Rehearing Withdrawn November 20, 1936.

670

*Chester B. McMullen,* State Attorney, *D. G. Haley, Baskin, Jordan & Richards* and *Mabry, Reaves, Carlton & White,* for Appellants;

*J. Locke Kelly, Harry L. Thompson* and *Edgar John Phillips,* for Appellee.

TERRELL, J.—At the time this suit was instituted the Appellee, Town of Belleair, had outstanding the following bond issues: $300,000.00 of public improvement bonds dated July 1, 1924; $119,700.00 of paving improvement bonds dated May 15, 1925; $700,000.00 of paving improvement bonds dated August 1, 1925; $110,000.00 of water and gas bonds dated August 1, 1925; and $50,000.00 of water and gas bonds dated March 1, 1927.

In January, 1936, the Town of Belleair, having decided to refund *en masse* all these bond issues, filed its petition in the Circuit Court of Pinellas County to validate a single issue of $1,049,000.00 bonds for that purpose. Some payments had been made on each of the original issues, and

some of them were refunding bonds.  Notice to show cause was duly published, the State attorney filed an answer on behalf of the State and certain citizens, taxpayers, answered in their own behalf.  There was no material difference in the answers.  Evidence was taken in support of the answer of the taxpayers, but no evidence was offered by the Town of Belleair.  The chancellor on consideration of the pleadings and the evidence entered his final decree validating the proposed issue of refunding bonds.  This appeal is from that final decree.

It is first contended that the validating decree was erroneous because issues one, two, and three, dated July 1, 1924, May 15, 1925, and August 1, 1925, respectively, were not for a public purpose, but that they were issued and the proceeds thereof used for the benefit of Belleair Estates, Inc., and Bellevue-Griswold Hotel Company, to promote their private enterprises, and consequently were in violation of Section Seven of Article Nine of the Constitution, both said corporations being "Chartered Companies" of the State of Florida.

The answer of the taxpayers alleges, and the evidence shows, that the issue of $300,000.00 dated July 1, 1924, was floated by the Town of Belleair Heights, incorporated under Chapter 9686, Acts of 1923, later changed to the Town of Belleair by Chapter 10335, Special Acts of 1925, that the Town of Belleair is four square miles and that the Town of Belleair Heights was considerably less, that there were no business places in the Town of Belleair Heights except the Bellevue-Griswold Hotel and that there were no business places in the Town of Belleair except a few ladies' wearing apparel shops conducted during the season the hotel was open, that the Town of Belleair owned no water front or submerged lands, and that the only access to the water

was over Coe's Road or "D" Street, that there were only twenty-six names on the first tax roll of the Town of Belleair for the year 1924, that at the time said bonds dated July 1, 1924, were issued the Town Commission was composed of Mr. Corley, Mr. Haley, and Mr. Barnes; that Mr. Corley was vice-president and manager of the Bellevue-Griswold Hotel Company, that Mr. Corley and Mr. Conklin organized and were the largest stockholders in Belleair Development Company which sold to Belleair Estates, Inc., organized by Mr. Haley, that Mr. Barnes was an employee of the Bellevue-Griswold Hotel Company working under Mr. Corley; that the petition to validate the said bonds shows that only ten votes were cast in the election to determine whether or not they should be issued, all of whom were employees of said Hotel Company, and none of them owned property assessed for taxes within the corporate limits of the Town of Belleair.

It was also shown that the $300,000.00 issue dated July 1, 1924, was for the purpose of "constructing wharves, ship channels, driveways, parks, and boulevards in the Town of Belleair Heights," but that in fact $254,745.64 or more than five-sixths of it was used for improving the water front (bulkheading and filling in) adjacent to the Bellevue-Griswold Hotel Company property and that the balance was used for a like purpose in front of Coe's property, Coe's Road, Wick's property, and the property of Belleair Estates, Inc.

As to the issue of $119,700.00 dated May 15, 1925, the answer and the evidence show that $12,621.99 of said issue was used to pave Coe's Road and that the balance of it was used to clear and pave streets in Belleair Estates, Inc., being the property of Belleair Development Company, a private corporation.

As to the $700,000.00 issue dated August 1, 1925, the answer and evidence show that eighty per cent. of it was spent improving streets in Belleair Estates which was a real estate development of something more than 450 acres of unimproved pine land lying adjacent to and within the Town of Belleair. This development was promulgated by Belleair Development Company and was sold by it to Belleair Estates. Mr. Corley and Mr. Haley were Commissioners of the Town of Belleair and both were stockholders in Belleair Development Company when these transactions took place. Mr. Haley promoted Belleair Estates to buy out Belleair Development Company and the title was passed before the proceeds of the $700,000.00 bond issue and the $119,700.00 bond issue were spent in developing Belleair Estates. It was unimproved except three or four small houses, all of which were acquired by Belleair Development Company. All the streets were cleared, graded, and paved by the Belleair Development Company and the Town of Belleair with the proceeds of the two bond issues as stated, and no one was living on this development until houses were built and to this date not exceeding twenty houses have been built on it.

On these facts as proven and the decision of this Court in State, *et al.,* v. County of Hillsborough, 113 Fla. 345, 151 So. 712, appellants rely to reverse the validating decree. In the case last cited we held that if county bonds were issued primarily for the benefit of a privately owned subdivision and to lend the county's credit to the owners thereof the bonds were void as county's general obligation, though they might be valid as evidencing interest of bondholders in special assessment fund.

We also held in the same case that in proceedings to validate county refunding bonds the Court should withhold

validation decree concerning original bonds sufficiently objected to until substantial objections are determined in proceedings wherein county and bondholders can be made parties.

In other decisions of this Court we have held that where municipal bonds are issued in violation of the Constitution and such violation is shown on the face of the bond or the validation proceeding the bonds are void notwithstanding the decree of validation. If questions of constitutional validity are not raised and settled in the validation proceeding they may be later availed of as a defense. Weinberger v. Board of Public Instr. St. Johns County, 93 Fla. 470, 112 So. 253; Thompson v. Frostproof, 89 Fla. 92, 103 So. 118.

To neutralize the assault of appellants on the bonds in question appellee contends that they are now and have been in the hands of *bona fide* purchasers for ten years and cannot under the law merchant be held void *ab initio* in a collateral proceeding supported only by evidence *de hors* the record of the bonds.

This contention finds some comfort, but not necessarily support in Hillsborough County v. Keefe, 82 Fed. (2d) 127, where the Court held that the judgment of State Supreme Court in proceeding to validate county refunding bonds was not *res adjudicata* as to unconstitutionality of original bonds in an action in Federal Court against the county by holders of defaulting original bonds, where no bondholder had been party to the validation proceeding, and such proceeding had been in respect to the refunding and not the original bonds.

We do not consider the doctrine announced in Hillsborough County v. Keefe, *supra,* to hold or apply a different rule from that expressed by this Court in State, *et al.,* v. County of Hillsborough nor does it conclude the question raised in the case at bar. In Hillsborough County v.

Keefe the Court was confronted primarily with the sufficiency of pleas to the declaration which were stricken. The merits of the case were not before the Court. In fact, while the same act was before both Courts in the two cases, different questions were adjudicated and the Federal Court in terms recognized the paramount authority of the decision of the State Court as to questions of State law.

The basis for the doctrine permitting courts to declare bonds void for want of authority to issue them, though they be held by innocent purchasers, is that no title can ever pass to bonds issued when there is a total lack of power to do so. If there is in fact no authority for their issue they are void and no person can become in law the innocent holder of void bonds. To be a lawful holder one must have derived his right under title that the issuing authority could transmit to the purchaser by sale in the first instance. Nuveen & Co. v. City of Quincy, 115 Fla. 510, 156 So. 153.

In addition to being in violation of Section Seven of Article Nine of the Constitution of Florida, appellants contend that the validating proceedings show that the bonds brought in question and proposed to be refunded were issued in direct conflict with controlling statutory law including the Charter provisions of the Town of Belleair, which being the Charter of the Town are on a parity as to it with the Constitution of the State.

Section Seven of Article Nine of the Constitution provides that no tax shall be levied for the benefit of any chartered company of the State, nor for paying interest on any bonds issued by such chartered companies, or by counties, or by corporations, for the above mentioned purposes.

This Court has repeatedly held that where a bond issue or the expenditure of the proceeds of it incidentally benefits any chartered company or corporation along with other per-

sons Section Seven of Article Nine is not violated. Hunter v. Owen, 80 Fla. 812, 86 So. 839; City of Venice v. State, 96 Fla. 527, 118 So. 308; West v. Town of Lake Placid, 97 Fla. 127, 120 So. 361. This rule will not save a situation like this where the officers of the town and the land company confederate together and promote bond issues and use them primarily to promote private enterprises in which they have a vital personal interest, but in which the public is only incidentally interested.

In other words, if bonds are issued for a lawful municipal purpose and in the application of the proceeds of them to streets, sewers, or other municipal purposes they happen to benefit or improve the lands of chartered companies or corporations in the same manner that they benefit the land of others, the provisions of Section Seven of Article Nine are not violated, but if the primary object of the issue or its appropriation is to benefit the property of a corporation or chartered company then the provisions of the Constitution are violated and the bonds are void insofar as they are a charge against the municipality. Constitutional guaranties should be effectuated according to their intentional purpose. If the acts complained of in this case can be palliated then they become futile and meaningless.

Belleair Estates and Bellevue-Griswold Hotel Company were both "chartered companies of the State" or "corporations" as contemplated by Section Seven of Article Nine of the Constitution and are such entities as the people had in mind when they interdicted, by said article and section, the assessment of a tax to benefit or pay interest on bonds otherwise issued or used to lend the town's credit to such companies.

Yet, notwithstanding the provisions of Section Seven of Article Nine the answer and the evidence show that Belle-

air Estates was a private real estate development fostered, owned, and controlled by members of the Town Commissioners of the Town of Belleair and that the major portion of the $700,000.00 bond issue and the $119,000.00 bond issue was appropriated to construct, grade, and pave streets in Belleair Estates. It is also by the same source shown that the Bellevue-Griswold Hotel is an exclusive winter tourist hotel owned by the Bellevue-Griswold Hotel Company and that more than five-sixths of the $300,000.00 bond issue was appropriated and used to improve the water front of the hotel property, that is to say, bulkhead, fill in, and make deep water in front of said property. In view of these facts it would be difficult to conceive a more flagrant violation of Section Seven of Article Nine than it would now be to impose a tax on the Town of Belleair to pay interest and retirements of these bonds.

If Section Seven of Article Nine does not afford a taxpayer relief under the facts disclosed in this record then there is no such thing as relief under that section. But little if any of the proceeds of the bonds were used for general municipal purposes; they were manipulated by an interlocking directorate of the town, the hotel company, and the land company. Such benefits as accrued from the bond expenditure accrued to the hotel company and the land company and but little if any benefit is shown to have accrued to the public. The defense of the taxpayers being one based on constitutional invalidity was not cut off by the validation of the original bonds.

This holding is directed exclusively to the proposed refunding bonds. The holders of the original bonds not being parties to this litigation, their contract in said bonds is not affected except as they are claimed to be general obligations of the town. The bondholder is not deprived of his right

to proceed against the properties specially benefited and improved by the proceeds of the bonds to recover his claim. State, *et al.,* v. County of Hillsborough, *supra.*

Having reached this conclusion it becomes unnecessary to discuss the contention of appellants to the effect that the city charter being the organic law of the city any violation of its provisions in issuing the bonds should meet with the same condemnation as violations of the State Constitution.

It is not out of place to state that instances might arise in which this contention would hold good, but we would not approve it as a general rule. The provisions of the charter with reference to the issue of bonds must be substantially complied with, but a failure to follow requirements that are merely procedural and not jurisdictional or mandatorially required by the Constitution may be cured by validation proceedings, curative Act, or they may in some cases be waived as a defense by one for whose benefit they were made.

In this holding we are not unmindful of the doctrine announced in Abell v. Town of Boynton, 95 Fla. 984, 117 So. 507, but the situation here is clearly distinguishable from that. In the case at bar we are concerned with a state of facts in which there is a clear constitutional mandate against imposing the tax complained of, while in Abell v. Town of Boynton we were confronted with a state of facts in which the law authorized a public improvement, the improvement was made as the law directed, the complaining party got the advantage of it, waived every opportunity the law gave him to object until years after during which he enjoyed the fruits of it. We held that he was estopped to then raise any defense to the assessments imposed on him.

Does the circumstance that each original bond issue as enumerated herein, except one, is supported by a validating

decree justify the validation *en masse* of a single refunding issue to refund all original issues over the protest of tax-payers when it is shown that part at least of the original bonds were validated in response to an improper and illegal petition and it is further shown that the validation was accomplished through constructive or legal fraud?

The mere fact of validating *en masse* is not objectionable. We have heretofore outlined the content of a petition to validate bonds and will not attempt to further detail its requirements here. The effect of a validating decree is to put in repose all questions of law or fact within the power of the Legislature to control, but such questions must be necessarily involved in the proceeding or put in issue by the petition. Abell v. Town of Boynton, *supra*. Purchasers of bonds are on notice that taxes cannot be levied to pay bonds issued for the benefit of chartered companies or corporations of the State and that a validating decree does not cut off that defense.

The original bonds having been issued and appropriated without legal authority, can there be such a person as a *bona fide* holder without notice as to them and how do the recitals of the bonds affect the holders?

It is agreed by appellee that if the term "legal authority" is confined to bonds issued in violation of specific constitutional mandate and that fact is patent on the record of the validation proceeding then no person can be a *bona fide* purchaser of such bonds.

In addition to what we have heretofore said on this point, in State, *ex rel.* Havana State Bank, v. Rhodes, 115 Fla. 259, 151 So. 289, we held that:

"Behind a recital of acts and proceedings importing validity of negotiable county, district, or municipal bonds, a *bona fide* holder for value is not bound to look, except for

legislative authority (citing authorities). The doctrine of legal estoppel by recitals in negotiable public securities is that, where certain officials have authority to issue bonds on the performance of certain conditions named in a valid statute, and the power is vested in them to determine whehter the conditions have been complied with, and they do so determine and recite, their decision that the conditions have been complied with is final and conclusive on the issuing authority although it may be true in point of fact that the conditions have not been complied with."

The bonds in question contain a recital to the effect that all acts, conditions, and things required by the Constitution and Laws of Florida precedent to the issuance of these bonds have been performed in regular and due form, time, and manner as required by law and that the amount of these bonds does not exceed the constitutional debt limit of the city.

Where there is statutory power to issue the bonds the rule as above quoted from State, *ex rel.* Havana State Bank, v. Rhodes, as to the effect of recitals in them is generally approved, but it is not final and conclusive when there is as in this case a complete absence of authority to issue the bonds or to impose a tax to pay interest on and redeem them. Regardless of the recitals in the bonds brought in question the record shows that they were issued and the proceeds of them were used for the benefit of Belleair Estates and Bellevue-Griswold Hotel Company, private corporations, and Section Seven of Article Nine is a positive prohibition against imposing a tax for the benefit of or to pay interest on such bonds. See note 51 A. S. R., beginning on page 849, and 1915A, L. R. A., beginning on page 970. There can be no such person as a *bona fide* holder of

bonds issued in contravention of this or other constitutional inhibition.

We find no objection to the validating decree appealed from insofar as it affects the issue of August 1, 1925, for $110,000.00 and the issue of March 1, 1927, for $50,000.00, known as water and gas bonds. As to these issues the final decree is affirmed. As to all other issues it is reversed.

It follows that the judgment below is affirmed in part and reversed in part.

Affirmed in part, reversed in part.

BROWN and BUFORD, J. J., concur.

WHITFIELD, C. J., and DAVIS, J., dissent.

ELLIS, P. J., not participating.