STATE, ex rel. FRED K. CONN v. T. N. HENDERSON, as Chairman, E. W. SIMMONS, et al., as and constituting the Board of County Commissioners of Hillsborough County, and W. S. Sparkman, as Tax Assessor of Hillsborough County, and J. M. Burnett, as Tax Collector of Hillsborough County.

177 So. 539.

Division A.

Opinion Filed November 23, 1937.

*William C. Gaither,* for Relator;

*John W. Cone, Henry C. Tillman, Curtis L. Sparkman, Charles I. Campbell, Howard P. MacFarlane, Dupree & Cone* and *McKay, MacFarlane, Jackson & Ramsey,* for Respondents.

*Cary D. Landis,* Attorney General, and *H. E. Carter* and *John L. Graham,* Assistant Attorneys General, for the State Treasurer;

*Knight & Thompson, Bedell & Bedell, George C. Bedell, William K. Whitfield* (of Tallahassee), and *James Messer, Jr.,* as *amici curiae.*

BUFORD, J.—This is an original proceeding in mandamus in which the Relator sought to coerce the levy of a tax sufficient to pay one of the series of 162 bonds in denominations of $1000.00 each with interest due and unpaid on such bond when the payment of the bond and the interest was in default.

The bond here involved was due July 1, 1935. The interest was payable semi-annually at 5% per annum.

Interest coupons numbered 14 to 18, inclusive, maturing July 1, 1933, January 1, 1934, July 1, 1934, January 1, 1935, and July 1, 1935, respectively, in the sum of $25.00 which were past due and unpaid.

The alternative writ not only commands the respondents, T. N. Henderson as Chairman, E. W. Simmons, B. B. Badger, Fred W. Ball and Nick C. Nuccio as and constituting the Board of County Commssoners, and W. S. Sparkman as Tax Assessor of Hillsborough County, to do and perform all acts and things necessary to be done and performed to effectuate the assessment and levy on the tax rolls of Hillsborough County for the year 1937 of a sufficient tax to produce a fund sufficient to pay the delinquent principal and interest, but it also commands J. M. Burnett to make collection under the levy and to pay the proceeds over to the Relator. While the court has the power to issue a writ as broad in its terms as the alternative wrtt in this case was made, it has been the policy of this Court to refrain from including orders coercing the tax collector to collect and pay over the funds produced by the assessment and levy in cases of this sort and we will not depart from that rule in this case, but will permit amendment of the alternative writ so as to eliminate the Tax Collector, Burnett, as a Respondent and to eliminate that part of the writ which is addressed to him as Tax Collector of Hillsborough County.

The bond involved here was issued under the provisions of Chapter 10140, Acts of 1925. The bond issue was validated under the provisions of Section 3296 R. G. S., 3302 R. G. S., 5106 C. G. L. to 5112 C. G. L., as supplemented by Chapter 10036, Acts of 1925, and Chapter 11854, Acts of 1929.

Section 3299 R. G. S., 5109 C. G. L., provides as follows:

"In the event no appeal is taken within the time prescribed herein, or if taken, and the decree validating said bonds or certificates is affirmed by the Supreme Court, the decree of the Circuit Court validating and confirming the issuance of the bonds or certificates shall be forever conclusive as to the validity of said bonds or certificates against the county, municipality, taxing district, or other political district or subdivision issuing them, and against all taxpayers and citizens thereof; and the validity of said bonds or certificates shall never be called in question in any court in this State."

The effect of the statutory provisions hereinbefore referred to is to confer upon the Circuit Court general equity power and jurisdiction in determining the validity of proposed bond issues coming within the purview of the Act. It, therefore, follows that when a bond issue has been validated by a decree of the Circuit Court having jurisdiction of the cause after notice as provided by statute, the decree becomes binding on all parties to whom the notice is directed and forever sets at rest every issue that was presented or that could have properly been presented in such validating proceedings. The bond involved in this case embraced the following recital:

"This bond is one of a series issued under the authority of and in full compliance with Chapter 10140, Laws of Florida 1925, for the purpose of paying the costs of certain highway improvements within and for said county. It is hereby certified and recited that all acts, conditions and things required by the Constitution and Laws of Florida to happen, exist and be performed precedent to and in the issuance of this bond, have happened, exist and have been performed in regular and due form and time as so required; that the total indebtedness of said county, including

this bond does not exceed any Constitutional or statutory limitation thereon; and that provision has been made for the levy and collection of a direct annual tax upon all taxable property within said county, sufficient to meet the payment of the principal and interest of this bond as the same shall fall due. This bond is registerable as to principal only, in accordance with the provisions endorsed hereon."

Therefore, the rule of law stated in the case of Board of Public Instruction of Dade County, *et al.,* v. State, *ex rel.* Tanger Investment Co., 121 Fla. 703, 164 Sou. 697, and in the case of State, *ex rel.* Rogers, *et al.,* v. Walthal, as Mayor, *et al.,* 125 Fla. 423, 170 Sou. 115, is controlling. In the first case above cited we said:

"That in truth and in fact a required bond election was actually called or held, when necessarily judicially found as a fact in bond validation proceedings, or certified as a fact in the recitals of bonds that have been duly negotiated and passed into the hands of *bona fide* holders for value without notice, cannot be negatived or put in issue by the obligor on the bonds is a universal rule of law in this country. This is so, because the certification or recital of the existence *vel non* of a recitable fact (such as the fact that a bond election was held and what its result was) on the strength of the truth of which recital in the bonds such bonds were sold or negotiated, effectually estops the obligor from subsequently denying the truth of the recital, or thereafter refuting or denying the truth of facts such obligor must have averred in judicial proceedings to have such bonds validated, even though the recited or certified fact of the calling and favorable result of a bond election to authorize the issuance of the bonds may be altogether non-existent, or the recital itself demonstrably false, as

can be later shown by proof offered in a civil suit brought to enforce the bonds."

And, in the latter case it was held:

"Decree validating and confirming issuance of municipal refunding bonds perpetually reposes validity of debt refunded and preserves in force, unimpaired, for benefit of refunding bond takers, sources of revenue pledged by original bonds where specified sources of revenue that were originally pledged have been repledged in refunding bonds, even though validated refunding bonds contain additional attempted pledges of revenue resources that are invalid."

The validity of the act here under consideration was upheld by this Court in the case of Whitney v. Hillsborough County, *et al.*, 99 Fla. 628, 127 Sou. 468, which was a suit instituted by a taxpayer to enjoin the collection of a tax assessed and levied to produce a fund with which to pay maturing bonds of the issue involved here. It was also held valid in the case of Hillsborough County v. Keefe, in the United States District Court for the Southern District of Florida, which judgment was affirmed in the Circuit Court of Appeals, 82 Fed. (2nd) 127 and in which case certiorari was denied by the Supreme Court of the United States. 298 U. S. 679, 80 L. Ed. 1400.

So it is, if there was vested in the Board of County Commissioners authority to issue the bonds of the character here involved, then the decree validating the bonds was binding on the County Commissioners and on the taxpayers of Hillsborough County and became as to them *res adjudicata* as to regularity and validity of the issue.

Section 2 of Chapter 10140, Laws of Florida 1925, provides as follows:

"That upon petition signed by the owners of two-thirds in interest, measured by the last preceding assessed valua-

tion for State and County taxes, of real estate described in such petition as property to be specially benefited which real estate shall be regarded as a district and may be either that which abuts upon. the line of the proposed improvement or may embrace properties not so abutting, as the petitioners may desire, requesting the Board of County Commissioners of any county in the State of not less than one hundred thirty thousand population, according to the census taken by the State of Florida in the year 1925, to grade, pave, curb or gutter any continuous portion of a single highway or two or more connecting highways, or to make two or more of such improvements, by assessment of the entire cost thereof against the real estate within the district or such portion of the cost, not less than seventy-five per cent thereof, as the petition may designate. The Board of County Commissioners shall have power in their discretion upon a finding by said Board that the petition is sufficient in form, substance and execution, to order such improvement to be made and to specially assess against property in the district that portion of the cost fixed by the petition and to pay as a county charge any of the cost which the petition has not requested shall be specially assessed."

Section 7 of the Act provides as follows:

"On or after the confirmation of the resolution said Board may by resolution authorize and issue bonds of the county for the payment of the entire cost or any portion thereof and for the reimbursement of any fund of the county from which any part of such cost shall heretofore have been made. If such bonds shall be sold or advertised for sale prior to the making of a contract for the work, they may be issued up to the amount of said estimate of cost, but otherwise shall not exceed the amount of the contract. A finding by said Board of the amount of the con-

tract shall be conclusive for the purposes of this Act. An issue of bonds need not be limited to one improvement and the bonds may be issued in one or more series at one time or from time to time for all or a part of the cost of any one or more improvements. Each issue of bonds shall mature in such annual series beginning not more than two years from their date as said Board may determine to be a reasonable maturity in view of the time of payments of special assessments made or anticipated to be made, except that portion of said bonds which said Board determines will represent the County's share of the cost, which portion may mature at any time or times not more than twenty-five years from date. No option of prior redemption of any such bonds shall be reserved and they shall bear interest at not more than six per cent. per annum payable semi-annually, and the principal and interest shall be payable in such medium and at such place as said Board may determine. They shall be the absolute, general and direct obligations of the county and shall be issued only in denominations of $500 or $1,000, with interest coupons annexed. They shall be sold by said Board after publishing at least fifteen days before receipt of bids therefor a notice calling for such bids in a newspaper of general circulation in the county and elsewhere as said Board may order, and shall not be sold at less than par and accrued interest; provided, however, that by vote of all members of said Board present at the meeting at which the vote is taken they may be sold at private sale without advertisement and may be sold at price not less than 95 cents on the dollar and accrued interest. They may be made registerable as to principal alone or as to both principal and interest under such conditions as said Board may determine and shall with the coupons thereto attached be executed as may be provided by said Board."

And Section 8 of this Act provides:

"Notwithstanding the provisions hereinafter made for the conservation and pledge of special assessments for the payment of such bonds and interest, said Board is hereby authorized and required annually to levy a special tax upon all taxable property within the county, sufficient to pay the maturing principal and interest of such bonds; provided, however, that the amount of such annual tax levy may be reduced in any year by the amount of such special assessments collected and held for the payment of such bonds or interest, it being the intention hereof to provide that such bonds shall be payable by general taxation as other bonds of the county, but that the additional security provided herein by way of special assessments will reduce the amount of such general taxation or will obviate altogether the necessity for the levy thereof."

In these three sections is found ample authority for the issuing of the bonds.

The bonds, as heretofore stated as by the pleadings is shown were issued, were validated by the Circuit Court having jurisdiction of the cause and exercising general equity powers and jurisdiction and embraced in the face thereof the certificate hereinabove quoted and have passed into the hands of *bona fide* holders for value without notice of infirmities. Therefore, Respondents, being the issuing authority, are estopped to deny that the bonds were issued in conformity with, or by virtue of, certain statutes or constitutional provisions amounting to conditions precedent. Board of Public Instruction of Dade County, *et al.*, v. State, *ex rel.* Tanger Investment Co., *supra,* State, *ex rel.* Rogers, *et al.*, v. E. B. Walthal, *et al., supra,* and cases there cited. See also Whitney v. Hillsborough County, *et al., supra,* and cases there cited.

Chapter 10140, amongst other things, provides in Section 10, as follows:

"Any person aggrieved may cause the assessments so confirmed to be reviewed by the Circuit Court of such county upon filing a written verified petition in the office of the Clerk of said Court within ten days after such confirmation, setting forth that the amount assessed against any property of the petitioner exceeds the amount of special benefits the petitioner has sustained or will sustain or is out of proportion to benefits or that the assessment is invalid for any reason whatsoever; provided that the petitioner shall file with said Clerk a sufficient cost bond in at least the sum of two hundred dollars, the sufficiency of the bond and surety to be determined by said Clerk, the petitioner shall cause to be delivered to the Chairman of the Board of County Commissioners of such county, or at his residence a copy of the petition. Within ten days after such delivery of such copy of the petition or within such subsequent times as said Court or a Judge thereof may allow, said Chairman shall appear in answer to such petition and the case shall be heard upon such petition and answer and upon such evidence as may be presented to said Court. The Judge of said Court may hear and determine the cause in term or vacation, giving said hearing and determination precedence over all other cases as far as may be practicable. The decision of said Court in such proceedings shall be final and an appeal shall be allowed only if properly prayed and perfected within ten days from the date of the order; if the assessment against such property shall be sustained or reduced or abated by said Court, the Tax Collector of such county shall note that fact on the assessment roll opposite the description of the property the assessment against which was so contested; the Court costs of any such proceedings shall be paid by the party complaining of such

assessment unless such assessment is abated or reduced by the Court 10% or more, and judgment shall be rendered against him for the amount of the costs; in case such assessment shall be abated or reduced 10% or more, such costs shall be paid by the county and judgment shall be entered against it for the amount thereof."

It is contended by the Respondents that these provisions violate Section 4 of the Declaration of Rights of the State of Florida and that by these provisions being included in the Act the entire Act is made invalid. It may be that on proper presentation of the question these provisions of the Act would be held invalid, but the Respondents here are not in position to urge the invalidity because they are in no way affected by such provisions. If such provisions are invalid then no one was bound by them and, therefore, no one would have been required to forego rights guaranteed to them under the provisions of Section 4 of the Declaration of Rights and the provisions of this section could be eliminated without affecting valid portions of the Act.

The Respondents also contend that bonds are void because they were issued in violation of Section 10, Article IX, of the Constitution which, in part, provides as follows:

"The Legislature shall not authorize any county, city, borough, township or incorporated district to become a stockholder in any company, association or corporation, or to obtain or appropriate money for, or to loan its credit to, any corporation, association, institution or individual."

This contention presents a question of fact which is foreclosed by the validation decree hereinbefore referred to, as are also other questions presented of like character.

This case is to be differentiated from those cases in which we have declined to affirm or require judgments validating refunding bonds where it has appeared that to pursue such course would result in depriving some party at interest, but

not a party to the suit, of rights which such party might otherwise invoke the jurisdiction of the courts to adjudicate, or in cases where the record of the issuance of the bonds showed upon its face that the bonds were issued in violation of the Constitution, or where the original bonds were issued with total lack of power to issue. See State, *et al.,* v. Town of Bellaire, 125 Fla. 669, 170 Sou. 434.

For the reasons stated, the motion to issue peremptory writ, notwithstanding the return, is granted and the peremptory writ is awarded.

So ordered.

ELLIS, C. J., and TERRELL, J., concur.

WHITFIELD, P. J., and CHAPMAN, J., concur in the opinion and judgment.

BROWN, J., concurs in the conclusion.