SPECTOR, Judge.
This case is now before this court upon appellants’ petition for constitutional writ or stay order pursuant to Article V, Section 5 of the Constitution of Florida, F.S.A., and Florida Appellate Rule 4.5, subd. g, 31 F.S.A. Appellants seek to halt the construction of certain “county road and bridge” proj ects which are presently in progress and which are being financed by the proceeds of duly validated bonds in the amount of $7,-900,000 encumbering eighty per cent surplus second gasoline tax funds. Appellants contend that the use of public funds in the manner contemplated is unlawful and contravenes constitutional prohibitions against using such funds for private purposes.
The cited constitutional provision empowers this court to issue all writs nec *111 essary or proper to the complete exercise of its jurisdiction. Writs pursuant to such grant of power may not be issued independently of other jurisdictional exercise. The power to issue an extraordinary writ such as that for which the appellants ask is one which should be exercised only where it is indispensable to the protection of the rights of the party seeking it. Cohen v. L’Engle, 24 Fla. 542, 5 So. 235.
In pursuance of the constitutional power to grant such writs as is here under consideration, Florida Appellate Rule 4.5, subd. g( 1) provides, among other things, that application therefor will be entertained only after reasonable notice and an appeal has been commenced. These conditions have been met as to the petition now being considered.
Petitioners allege that five complaints were filed by them in the Circuit Court of Monroe County, Florida, against the respondents-appellees herein seeking a temporary and permanent injunction restraining said public bodies and officials from making any further disbursements of funds or entering into any further contracts or agreements in connection with the construction of certain specified road, bridge, and canal projects in Monroe County. The grounds upon which such injunctive and restraining orders were sought specifically consisted of contentions that the expenditure and disbursement of the funds involved would be “ * * * for the personal and corporate profit and the private money-gaining purposes of a few owners of large wild and uninhabited acreage tracts to be traversed by said roads and bridges * * * ” in alleged direct violation of Article IX, Section 10, Florida Constitution, which reads:
“ * * * The Legislature shall not authorize any county, city, borough, township or incorporated district to become a stockholder in any company, association or corporation, or to obtain or appropriate money for, or to loan its credit to, any corporation, association, institution or individual.”
Said actions were transferred to the Circuit Court for Leon County, Florida, and consolidated into a single cause. The defendant governmental agencies filed motions to dismiss the complaints. After hearing oral arguments and examining memorandum briefs submitted by counsel, the chancellor entered his order of dismissal, basing said order on the pronouncements of this court in Crowe v. City of Jacksonville Beach, Fla.App., 167 So.2d 753, and other like cases. Thereafter, timely notice of appeal was filed seeking review by this court of said dismissal order.
Apprehending that a significant period will lapse before said appeal is decided by this court on its merits, during which period considerable funds will have been expended by way of direct disbursement as well as by contract commitments, and having been unsuccessful in their attempt to obtain injunctive relief below, the appellants filed the herein petition for constitutional writ or stay order “ * * * to preserve and maintain the status quo over and of all Monroe County borrowed funds which remain unexpended * * * and which have been allotted * * * to any of the six construction projects described in appellants’ complaints and amended complaints. * * * ”
In essence then, the petitioners have asked this court, as it is empowered to do by the constitution in proper cases, to issue a writ which is tantamount to and would have the effect of an injunction order or “negative supersedeas” which would obtain during the pendency of the instant appellate proceedings. Parenthetically, a helpful discussion of the nature and use of the device sought to be employed by petitioners may be found in Florida Civil Practice After Trial, Section 21.68 et seq., published *112 by The Florida Bar Continuing Legal Education Committee.
In determining whether the issuance of the writ prayed for is both “necessary” and “proper” to the complete exercise of this court’s jurisdiction, we have examined the complaints which were before the chancellor below.
The five projects specified in the consolidated complaints are generally described as follows in the pleadings before the chancellor:
1. Lignumvitae Key — construction of bridge and causeway fill from the keys mainland (U. S. Highway #1) to Lig-numvitae Key.
2. North Key Largo — construction of a three-mile “ocean to bay” road stretching from the Atlantic Ocean to Card Sound.
3. No Name Key — construction of bridge to Big Pine Key; rebuild old road #4-A; build road from S.R. 5 to old road #4-A.
4. Sugarloaf Key- — construction of road, including a canal and bridge at S-939A, from Sugarloaf Sound to ocean; Ramrod Key — road and bridge.
5. Duck Key — new bridge from U. S. Highway #1 to Duck Key and all streets in Duck Key subdivision.
Each of the above enumerated projects are described by the plaintiffs either as traversing wild and uninhabited lands or leading to and upon lands or islands that are privately owned. Plaintiffs assert with much emphasis that the roads, bridges and streets to be constructed in the subject projects are not valid or lawful public projects in that they are being constructed for the use and benefit of the private owners of the lands involved in conflict with the provisions of Article IX, Section 10 of the Florida Constitution.
Typical of the allegations made in the complaints with respect to the projects involved is the following:
“It is alleged that any payment of money or contract made by Monroe County or the Defendant State Road Department to dredge and construct a bridge and causeway across the waters of Florida Bay to Lignumvitae Key will be an appropriation of money and credit for the private and individual use and benefit of the three owners of said undeveloped land who aspire to develop and reap private profits from their said offshore land; and that any disbursement of funds and agreement or contract made by the defendants in furtherance of such a design, and for such private purpose is unconstitutional and void from its inception and prohibited as a matter of law”.
In the consideration of this cause, it is important to note that the plaintiffs emphasized in their complaints that they do not attack the validity of the $7,900,000 bond issue which was earlier validated on January 21, 1966, for the purpose of funding some 87 different road, bridge, and canal projects. Rather, plaintiffs made it clear that they seek only to restrain the construction of the projects enumerated above on the theory that the expenditure of funds therefor would be violative of Article IX, Section 10 of the Florida Constitution. Plaintiffs further point out that the decree validating the total bond issue expressly confers authority upon the appropriate state agencies to make any changes, additions, or substitutions in any of the involved roads or bridges as may be deemed necessary by such agencies. The value of all of the projects sought to be enjoined is approximately $3,000,000 which includes approximately $645,000 for the Duck Key project.
*113 The correctness of the order dismissing the complaints herein is at the heart of the instant case. By their several motions to dismiss, the defendant agencies have admitted the truth of each and every well pled material allegation of fact in the complaints. This proposition is so deeply imbedded in our rules of practice that it needs no citation of authorities for support. What then are the material allegations of fact which were thusly admitted? As to all of the projects alleged upon save the last one relative to Duck Key, the worst that has been said as to the actual use of funds is that the county commission has designated road and bridge projects that eith'er traverse wild and uninhabited land in private ownership or causeways and bridges running from the mainland, of which there admittedly is precious little in Monroe County, to nearby islands or keys which in turn are privately owned. The gist of the plaintiffs’ attack on such expenditures of public funds is that by their in-currence, the private owners whose land abuts on the questioned roads and canals or whose islands are at the terminus of a given bridge or causeway will of necessity profit by the enhancement of land values.
But the plaintiffs’ complaints as they relate to all of the contested projects except as to the Duck Key subdivision streets project avail them not for it has long been held that the courts will not interfere with administrative agencies of the state in the exercise of- their lawful discretion in matters affecting the location of state roads, bridges, and canals. In the case of State of Florida v. Florida State Improvement Commission, 75 So.2d 1 (Fla.1954), the Supreme Court stated:
“In the planning and construction of roads and bridges discretion must be placed somewhere. The needs of communities, counties and the state may be considered by these agencies in which discretion is vested. It is well settled in this state that the authority of the Legislature over roads and bridges is plenary unless restricted or forbidden by some particular provision of the Constitution of the United States or of the State of Florida. The authority of the administrative agencies to whom is entrusted these governmental functions is limited only by the lawful exercise of their discretion. Within their respective areas of authority these public agencies exercise their discretion to devise plans and select sites • to best serve the public need. When the plans adopted by such agencies do not exceed their lawful authority they should be upheld because the Court will not substitute its judgment for that of administrative agencies.
i|C ífí }£ iji 5†<
“The. establishment, continuance and location of roads and bridges is vested in the discretion of administrative agencies. The sites or location of public improvements have always been questions over which men differed. Experience has demonstrated that squabbles and disputes over locations and sites of public improvements always come into being at the very contemplation of a major public improvement. It is true with reference to court houses, schools, playgrounds, parks, and -particularly, with reference to roads and bridges. It seems to be a part of human nature for property owners, and particularly those owning commercial establishments, such as, motels, fishing camps, gasoline stations and amusement centers to feel that the location or site of a major road or bridge development is all right if it goes in front of their door. Everyone would like for his particular property to be benefited by reason of the location or site of the improvement. The primary purpose' of building roads and bridges is to serve the general public rather than a particular individual or a particular part of a community.”
As to projects numbered 'one through four hereinbefore, the chancellor was eminently correct in ruling that the *114 plaintiffs had not stated a cause of action to enjoin the construction of said four projects.
It is our view that these four projects clearly come within the broad meaning of public roads and bridges which may be constructed with public funds. Although the complaints relating to those projects each allege the legal conclusion that the expenditure of funds required for completion of the projects contravenes the constitutional prohibition against using public funds for private purposes, the ultimate facts alleged constitute nothing more than a challenge to the sound discretion exercised by the public officials in adopting for construction the projects in question, which challenge more properly could and should have been interposed as a defense to the bond validation proceedings which were instituted and successfully concluded prior to the institution of these suits, and from which no appeal was taken. Such objections have therefore been set at rest by the decrees of validation, and may not be relitigated in these proceedings. The authority to expend public funds for the construction of such a public project cannot be challenged in a collateral suit to enjoin the expenditure of proceeds of a bond issue which has been validated.
As to Duck Key project, however, the allegations in the complaint give us more concern when read in light of the Supreme Court’s pronouncements on the subject of construction of subdivision streets with public funds at a time when such subdivisions are in the initial stages of development and yet substantially uninhabited. Respecting this project, we set forth some of the allegations in the complaint:
“Plaintiffs bring this action for themselves and on behalf of other taxpayers of Monroe County who are opposed to the misuse and waste of $645,000.00 (plus interest) of county funds * * * for the sole use and benefit of private owners and developers of the Duck Key Hotel and subdivision complex. * * *
“Plaintiffs allege that Duck Key is a privately owned commercial hotel and subdivision complex consisting of hundreds of platted residential lots and hotel guest houses, bathing pools and various hotel concessions which usually form a part of a large resort of that type on the Florida east coast. It is located approximately one mile northeast of Grassy Key on the Atlantic side of U. S. No. 1 Highway.
“There are no business or industrial establishments; nor public bathing beaches or picnic or recreational areas of any kind, existing or in contemplation upon said Key, nor any other type of public attraction or utility of any sort which could be of any benefit to the taxpayers and general public of Monroe County. There are only five or six homes within the whole subdivision.
“Plaintiffs charge that the private owners of the aforesaid hotel subdivision complex on said Duck Key would reap direct benefits and personal profits from the aforesaid $645,000.00 interior street and road donation from public funds and, that any possible public benefit or purpose therefrom would be completely speculative, remote, secondary, and insignificant. * * *
“That the defendant County Commissioners and State Road Department plan to lay out and construct * * * projects on Duck Key for the use and sole benefit of the private owners of the said Key which entails many hundreds of building lots which thereby will be rendered more attractive market-wise, and subject to less costly advertising and sales programs; but which action and result will be without any useful or proper public benefit or return to the taxpayers of Monroe County.”
The question posed by the portions of the complaint above set out then is whether, under Article IX, Section 10 of the Florida Constitution, public funds may be *115 expended to construct streets in a substantially uninhabited subdivision such as that alleged upon and more specifically depicted in the attached drawing.

In State v. Hillsborough County, 113 Fla. 345, 151 So. 712, 717, the Florida Supreme Court, having before it a similar question, .though in a different procedural posture, held that allegations analogous to those in the case at bar were:
“ * * * sufficient to raise a substantial question as to whether or not the *116 original bonds [validated in an earlier statutory proceeding in which a decree purporting to validate such bonds was entered] were issued for a lawful public purpose, or issued primarily as a result of a plan of the county of Hillsborough to lend its credit to certain private business enterprises; the same being the development of subdivisions for the purpose of making it possible for those subdivisions to acquire improved streets without the present outlay of large sums of money and with the county assuming the obligations to pay for such street improvements in the event the promoters, owners, and purchasers of lots in such subdivision fail to pay for the same. * * *"
It is interesting to observe that in the Hillsborough County case, the general public might have been spared the ultimate burden of payment for the subdivision improvements if the public’s gamble resulted in a successful subdivision venture, for in that event the lot owners would have paid for the improvements through tax assessments.
The Hillsborough County case, supra, from which the above quotation is taken was a suit to validate some refunding bonds proposed to be issued by Hillsbor-ough County to pay off an earlier issue made by the county, the proceeds of which earlier issue were used to construct a veritable network of subdivision streets. Apparently, the contention was raised in that case, as it is in the case at bar, that the validity of the purposes for which the proceeds of the earlier bond issue were used was set at rest by the validation decree entered in the first instance. However, the Supreme Court rejected said contention stating at page 715 that:
“These allegations [use of funds for subdivision streets as constituting private purpose] may not necessarily be such matters of defense as may have been set at rest by a decree validating the bonds. The proof of these allegations would be sufficient to cast a grave doubt as to whether or not the bonds were issued for a county purpose, * * * This doubt, if established, would be sufficient to defeat the validation of bonds sought to be issued to refund such original bonds * *
We wish to emphasize that in the instant case no attack was made upon the validity of the bonds which were the subject of validation proceedings, and we expressly make no ruling as to the validity thereof since that question is not before us. The appellants make it amply clear by their pleadings that they seek to curb only the illegal use of such funds.
Although the allegations describing the Duck Key subdivision were admitted by the defendant governmental agencies in their respective motions to dismiss, the chancellor below neither reached nor decided this vital question. The briefs and arguments of counsel and the order appealed make it clear that the ruling of the court below was based on the interpretation of our decision in Crowe v. City of Jacksonville Beach, 167 So.2d 753, to the effect that once an order in a bond validation suit has become valid, no issue which was or could properly have been raised in the validation suit could thereafter be raised in a subsequent or collateral proceeding.
That this is the general rule, the authorities seem to be in agreement. However, even in Crowe, supra, at page 754, we recognized the soundness of the principle of law stated in Williams v. Town of Dunnellon, 125 Fla. 114, 169 So. 631, holding that:
“ * * * the illegal, improper, or extravagant use of funds legally borrowed for, or otherwise acquired for, public purposes or uses may be enjoined or redressed by due course of judicial proceedings.”
The Williams decision was simply not applied by this court in Crowe, supra, *117 because it had no application to the facts at hand. In Crowe, the court was concerned with the expenditure of funds for an admittedly public purpose, only the wisdom and discretion of which were being challenged. In contracts, the instant case involves a direct constitutional attack on the expenditure of funds for the construction of subdivision streets which the Supreme Court in State v. Hillsborough County, 151 So. 712, held to be a private purpose and, therefore, illegal under Article IX, Section 10 of the Florida Constitution. Accordingly, we now hold that the use of public funds to construct streets in a substantially uninhabited subdivision is constitutionally impermissible as violative of Article IX, Section 10 of the Florida Constitution, the earlier bond validation proceedings notwithstanding. Again, we emphasize that we do not here rule upon the validity of the bonds which were the subject of validation, our ruling being confined strictly to .the use of a portion of the proceeds from the bond issue for what we here find to be for private purposes.
In Collins v. Jackson County, Fla.App., 156 So.2d 24, and Padgett v. Bay County, Fla.App., 187 So.2.d 410, this court upheld the discretion of the respective boards of county commissioners to use county owned equipment and labor to pave streets in small subdivisions, there having been charged in both cases an abuse of discretion on the part of the defendant boards. In neither Collins nor Padgett was there a constitutional ground asserted for declaring illegal the county’s use of funds for construction of subdivision streets as is the case in the instant litigation. Indeed, in Collins, supra, we stated 156 So.2d at page 27:
“ * * * the courts are always open to hear a taxpayer’s complaint that the County Commissioners have abused their discretion in determining that the public interest justifies construction at public expense of a particular road even though the county has legal title to, or a valid easement over the land in question. This suit does not present that problem.”
We are of the view that the instant case presents a fact circumstance as relates to the Duck Key subdivision streets project which lies within the judiciary’s authority to determine the legality of a given public expenditure when called upon to'do so.
The court has had the benefit of oral argument by counsel for the respective parties on the appellants’ petition for the issuance of a constitutional stay writ together with briefs from the parties'on that question. Additionally, the parties have submitted their briefs on the merits of the full appeal. A thorough study of said briefs together with the voluminous record on appeal inclines the court to the view that no further argument is necessary in this cause; and, therefore, in accordance with the provisions of Florida Appellate Rule 3.10, subd. e, the court in its discretion hereby dispenses with further oral argument in this cause.
The final decree appealed herein is affirmed with respect to all complaints except the one relating to the Duck Key project. The decree of dismissal with respect to the complaint pertaining to Duck Key is reversed and the cause remanded for further proceedings consistent with the views expressed herein.
Although a proper showing has been made to activate this court’s jurisdiction and authority to issue the constitutional writ prayed for, such issuance would be ineffective to serve the desired purpose intended. The motion for the writ is therefore denied, but upon the going down of our mandate the chancellor is directed to grant the prayer of the complaint in the Duck Key case for a temporary injunction pending the final determination of the cause upon the plaintiff filing an injunc *118 tion bond upon such reasonable terms and conditions as may be prescribed by the chancellor.
Affirmed in part, reversed in part.
WIGGINTON, C. J., and JOHNSON, J., concur.